JOHNSON'S ADMINISTRATOR, Respondent, v. McCUNE, Appellant.

1. A statement, in a letter to a party sought to be retained as clerk of a boat then building, that the boat was expected out at a specified time, can not be construed into a guaranty or engagement that she would be out at the time named. (Johnson v. McCune, 21 Mo. 211.)

*Appeal from St. Louis Court of Common Pleas.*

This case has heretofore been before the supreme court. (See 21 Mo. 211.) The plaintiff introduced in evidence a letter of defendant, which is as follows: " St. Louis, February 7, 1852. Mr. Willis C. Johnson: Dear Sir—I named to you that the company would want your services, last fall

when you were about to leave, since which we have made an arrangement with Capt. Dean to take charge of the new boat to be called the Jeanie Deans, and you to go with him. You will please let us know, at your earliest convenience, if it will suit your arrangements to go on her. She will not be out as soon as her contract calls for, on account of the severity of the winter. However, we expect her to be out in April. Yours respectfully. [Signed] J. S. McCune."

Plaintiff also introduced in evidence the following letter from Willis C. Johnson to the defendant McCune: " St. Louis, Mo., September 3, 1852. Mr. John S. McCune: Dear Sir—Last fall you spoke to me in regard to a clerkship in your packet line from St. Louis to Keokuk, and requested me to hold myself in readiness in the spring when navigation should open, to [go] on one of your packets as clerk on the same terms I was clerking on the ' New England.' You were kind enough to commend my faithfulness and business capacity and I promised you I would make no other arangement that might conflict with taking a clerkship on your line in the spring. In the winter you repeated the request (I think in February) and specially retained me as clerk on the Jeanie Deans, and stated that my services would be needed in April, as the boat would then come out; and you also requested my express agreement to go on the Jeanie Deans at that time. And I handed a note to Mr. Daniel Able, which he gave you, signifying my consent to be clerk on the Jeanie Deans. Now, sir, ever since that time I have been in the constant expectation of the Jeanie Deans coming out, so that I might go to work. In order that I might not disappoint you and the company for whom you act, I have made no other arrangements at all, hoping continually to go upon the Jeanie Deans according to the mutual understanding. When other situations have been offered me I have declined them for the reason mentioned. You may judge how surprised I am, under these circumstances, to find that, after all this delay and disappointment to me, the ' Jeanie' has come out and is now running without notice to me, and that the

Johnson's Adm'r v. McCune.

clerkship has been given to another. I am confident that it is your intention to do me justice in the premises. It is impossible to think that you contemplate any thing else. I respectfully await your reply to this letter, and will repeat that I rely on your sense of justice for a fair answer. Address me at the Monroe House. I had intended to call and see you and have more conversation than we could have this morning on the street, but I am not very well. Please let me hear from you. Very respectfully. W. C. Johnson." The plaintiff also introduced in evidence McCune's reply to this letter.

The court gave the following instruction asked by defendant: "9. The letter of defendant of date of February 7, 1852, is not a guaranty on the part of defendant that the Jeanie Deans should come out in the month of April, or at any specific time; nor does it operate as an agreement that said boat should come out in the month of April or at any other time."

The court also gave the following instructions for the plaintiff: "1. If the jury believe from the evidence that the defendant contracted as charged in the petition with Johnson for his services as first clerk of the steamer Jeanie Deans at the usual or reasonable rate of compensation for said services, said services to commence when said steamer came out and began running, and agreed that said steamer should come out and commence running in April, 1852, notified said Johnson that said steamer was expected to come out and commence in the month of April, 1852, and said Johnson remained ready and willing to fulfil said contract on his part from said month of April until September 15, 1852, and that said steamer came out and began running prior to said September 15th, and the defendant refused to comply with his contract or to accept the services of said Johnson as contracted for and failed to notify said Johnson of said refusal prior to said September 15th, then the jury will find for the plaintiff and assess the damages at the usual rate of compensation therefor for the time said Johnson was out of employ-

ment in consequence of said contract up to said September 15, 1852 ; unless the jury further believe from the evidence that the contract aforesaid was made under a custom of the company known to said Johnson that the contract might be rescinded at any time thereafter by the defendant or company, if the captain of said steamer was changed and desired a change of clerks, and said contract was so rescinded and the defendant notified thereof prior to any damage sustained by the said Johnson from the nonperformance of said contract by the defendant and the said Keokuk packet company. 2. If Johnson was employed by defendant in February, 1852, to go as first clerk on the Jeanie Deans when she should come out, and also agreed the said boat should come out in April, 1852, and said Johnson held himself in readiness to perform said agreement on his part, and defendant was not ready to accept his services until August 18th, and then failed and refused to accept the same, they will find for plaintiff the value of plaintiff's services, whether rendered or not.''

The jury found for plaintiff.

*Shepley*, for defendant.

*S. T. & A. D. Glover*, for respondent.

I. Instructions numbered one and two, given for the plaintiff, were given on the first trial, and passed the ordeal of this court when the case was here before.

NAPTON, Judge, delivered the opinion of the court.

The instructions in this case are inconsistent with each other. The court declares that McCune's letter of February, 1852, did not amount to a contract that the Jeanie Deans should be *out* in April, in accordance with the decision made by this court when the case was here before ; (see 21 Mo. 215 ;) but gives the first and second instructions on behalf of the plaintiff, which are altogether based upon the hypothesis that such a contract was made. The only proof of such a contract was McCune's letter of February, 1852.

The plaintiff's conduct and letter of September 3d, 1852, are not at all reconcilable with the claim he asserts in this case for wages from April 1, 1852, to September 15, of the same year. The letter of the 3d of September does not allude to any claim for back wages, and if he had *then* been employed would he have been entitled to wages from the 1st of April? Is it not remarkable that from the 1st of April to the 18th day of August, when the Jeanie Deans made her first trip, that Johnson never made any inquiries of the company relative to the time they would probably want his services, and never advised them that he considered himself all that time on wages? Ought he not, if he so regarded the engagement between him and McCune, to have reported himself and informed them that he was idle, waiting on them for employment? Is it not reasonable that such would have been his course? If the company had been apprised of this, and had understood the contract as he did, they might, with his consent, have furnished him with other employment equally acceptable to him and profitable to them. But it does not appear that from the 1st of April down to the 18th of August the plaintiff, though frequently in St. Louis, ever mentioned the subject to McCune, and it was not until the 3d of September that he spoke to him, and his letter of that·date does not complain of the nonpayment of past wages.

If no wages for the time previous to the coming out of the Jeanie Deans were due to Johnson, then the damages arising from the breach of the contract to employ him at that time, if such a breach occurred, must be estimated as they would be for the breach of any other contract, without reference to what had occurred previously.

The judgment is reversed and the cause remanded; Judge Scott concurring. Judge Richardson not sitting, having been of counsel.