WESTERN WOOLEN MILL CO. v. NORTHERN ASSUR. CO. OF LONDON.

(Circuit Court of Appeals, Eighth Circuit. July 22, 1905.)

No. 2,216.

1. INSURANCE—CONSTRUCTION OF POLICY—"FIRE" DEFINED.

The word "fire," as used in an insurance policy, in the absence of language showing a contrary intention, is to be given its ordinary meaning, which includes the idea of visible heat or light.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1126.]

2. SAME—SPONTANEOUS COMBUSTION.

A large quantity of wool in fleeces covered by fire insurance policies was submerged for several days during a flood, which caused spontaneous combustion, with smoke and great heat, by which the wool was damaged and its fiber destroyed, but there was no visible flame or glow. Held, that the loss was not the result of fire, within the meaning of the policies.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, § 1126.]

In Error to the Circuit Court of the United States for the District of Kansas.

The woolen mill company sued the assurance company to recover the amount of two policies of insurance issued by the latter to the former on the 6th day of August, 1902, and on May 5, 1903, for the sums of $4,000 and $1,500, respectively. The property insured was wool, and it was insured against all direct loss or damage by fire. At the trial the evidence on the part of the woolen mill company established the following, among other, facts:

On the 29th day of May, 1903, the woolen mill company owned about 80,000 pounds of wool, stored in certain buildings at Topeka, Kan., which was covered by the policies in question. The wool was in the same condition as when taken

from the sheep. Wool in this condition contains about 5 per cent. of foreign matter in the way of manure, strings, and straw. On or about the 29th day of May, 1903, this wool was entirely submerged by water, caused by an unusual flood in the Kaw river, and remained so submerged for eight days. After the subsidence of the water, the woolen mill company endeavored to save the wool by spreading it around upon floors for the purpose of drying the same. The wool was found to be wet and covered with mud, very much heated, and, when handled, the fleeces came apart as if the fiber of the wool had been destroyed by the action of the heat and the water, or, as plaintiff in error claims, by burning. It became necessary in handling the wool to use pitchforks, as the wool was too hot for the hands. The strings around the fleeces had apparently burned. There was smoke in the rooms where the wool was, and an odor of burned wool. There was no flame to be seen, no firelight, and no visible fire. Whatever process was acting upon the wool to its damage was as visible at the time the wool was first seen and separated as at any time. The wool was not hot enough to blister one's hands in handling it. The building in which the wool was stored did not burn, nor any part of it. Whatever damage was done to the wool was caused by the action of water thereon. There was evidence of ashes. There was steam and smoke, and the wool was said by one witness to be charred; but at all the times the wool was wet. Wool in the condition of the wool in question is subject to spontaneous combustion when submerged in water. Spontaneous combustion is a rapid oxidation. Fire is oxidation which is so rapid as to either produce flame or a glow. Burning and rotting are, in the main, processes of oxidation, a combining with oxygen; but in the rotting that operation of combining with oxygen is indirect, and helped by what is called fermentation or bacterial action usually. In the case of burning, the substance combines directly at the high temperature with the oxygen of the air, and produces the ordinary effect of burning in the stove.

At the close of the evidence for the mill company, counsel for the assurance company demurred to the evidence, upon the ground that the same did not show that the wool was damaged by fire, within the meaning of that term as used in the policies of insurance. The trial court sustained the demurrer and discharged the jury. Judgment was thereupon entered for the assurance company. Exceptions having been taken to the court's ruling, the case is now here on writ of error. As the rulings of the trial court on the admission of evidence and other matters appearing in the record could not affect the result arrived at, they will not be noticed.

Clifford Histed (W. H. Rossington, Charles Blood Smith, and J. S. West, on the brief), for plaintiff in error.

Charles J. Greene and Ralph W. Breckenridge (Quinton & Quinton, on the brief), for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge, after stating the case as above, delivered the opinion of the court.

However interesting it might be to follow counsel in their scientific investigations, we think the case may be decided by the application of well-known principles to the facts appearing in the evidence. The policies of insurance were contracts between the parties to this litigation, and must be construed as such. In their interpretation we must give to the words employed therein their ordinary popular signification, unless it appears the parties intended to use them in a different sense. No such intention appears in this case as to the use of the word "fire." That the wool, submerged

for the time mentioned, became smoking hot, may be conceded; that spontaneous combustion, caused by the wool being submerged in water, existed may also be conceded; and still the plaintiff has not shown any direct loss by fire as that word is used and known to the public generally. Fire is always caused by combustion, but combustion does not always cause fire. The word "spontaneous" refers to the origin of the combustion. It means the internal development of heat without the action of an external agent. Combustion, or spontaneous combustion, may become so rapid as to produce fire; but, until it does so, combustion cannot be said to be fire. "Fire" is defined in the Century Dictionary as "the visible heat or light evolved by the action of a high temperature on certain bodies, which are in consequence styled 'inflammable or combustible.'" In Webster's Dictionary "fire" is defined as "the evolution of light and heat in the combustion of bodies." No definition of fire can be found that does not include the idea of visible heat or light, and this is also the popular meaning given to the word. The slow decomposition of animal and vegetable matter in the air is caused by combustion. Combustion keeps up the animal heat of the body. It causes the wheat to heat in the bin and in the stack. It causes hay in the stack and in the mow of the barn to heat and decompose. It causes the sound tree of the forest, when thrown to the ground, in the course of years to decay and molder away, until it becomes again a part of mother earth. Still we never speak of these processes as "fire." And why? Because the process of oxidation is so slow that it does not, in the language of the witness at the trial, produce a "flame or glow."

It appears, without contradiction, from the evidence, that there was not at any time any visible heat or light in or about this wool. Wool is an animal fiber, and the necessary result of its submergence in water and mud for the time mentioned would be that it would become heated, and disintegration of the fiber would occur. But, according to the evidence, the internal development of heat never at any time became so rapid as to produce a flame or a glow, and hence, within the meaning of the word "fire," as used in the policies of insurance, there was no fire.

We think the ruling of the court below was right, and the judgment must be affirmed.