## ATLANTIC COAST LINE RAILROAD CO. *v.* WELLS.

Where the agents of a railroad company stated to an owner of perishable goods that the company had a schedule for one of its trains between Savannah and New York of 43 hours, and expected to maintain the schedule, and that everything possible would be done to maintain it, and such owner, acting on the belief induced by such statements that such train would reach destination in 43 hours, made shipments of such goods thereby from Savannah to New York, a special contract to transport the shipments in 43 hours was not made by the carrier.

Argued January 7,—Decided February 1, 1908.

Action for damages. Before Judge Cann. Chatham superior court. March 19, 1907.

*Shelby Myrick* and *Garrard & Meldrim,* for plaintiff in error.
*Stubbs & Chapman* and *Adams & Adams,* contra.

HOLDEN, J.   B. S. Wells brought suit against the Atlantic Coast Line Railway Company, for damages on account of the alleged breach of a special contract to transport the products of the plaintiff's farm from Savannah to New York in 43 hours time. The plaintiff alleged, that in pursuance of this contract he delivered to the defendant, at different times, certain lots of potatoes and beans, which the plaintiff failed to transport within 43 hours, or within a reasonable time thereafter, and that by reason of this failure the plaintiff was damaged in the sum sued for, on account of the deterioration in value, and on account of the difference in the market value, of the products at the time they should have arrived in New York under the contract and the market value at the time of their actual arrival. Upon the trial of the case a verdict was rendered in favor of the plaintiff. The defendant moved for a new trial, which motion was overruled, and exceptions were taken.

The evidence introduced showed that shipments of beans and potatoes were made by the plaintiff over the defendant's road, and that such shipments were considerably more than 43 hours in transit from Savannah to New York; and established the difference in the market value at the time of their arrival and the time at which they would have arrived if transported within 43 hours, or within a short time thereafter, and also the loss on account of deterioration in value. The plaintiff testified, that in April, 1904, prior to these shipments during that year, at the instance of Mr. Warrick, the soliciting agent of the defendant, he went to the office of Mr. Wright, superintendent of the defendant, where a conversation was had in reference to the plaintiff making shipments over the defendant's railroad, and other matters; and that in this discussion the following conversation occurred: "Mr. Wright said they had a schedule from Savannah to New York in 43 hours. There was other business spoken of at the time—as to the length of time I would have to load cars at the crossing at White Bluff road on their line. Mr. Wright said that they expected to maintain that schedule of 43 hours from Savannah to New York. I said 43 hours was a quick time. I said, 'If you give me within 54 hours, that will be time enough for me; that will be time enough to reach the market.' These beans and potatoes mentioned in these re-

ceipts [referring to receipts in evidence] were shipped by me upon the faith of that statement. I would not have shipped them if I didn't believe they would arrive in New York in a reasonable time or 43 hours. If it varied 2 or 3 hours, it would not make any particular difference; but a variation of 24 or 20 hours would not reach the market." The plaintiff received a letter from Mr. Wright, dated May 20, 1904, signed W. H. Wright, Supt., and addressed to the plaintiff, in which the following statement occurs: "As stated to you in conversation while in my office sometime ago, we have a 43 hours schedule to New York, and of course everything possible is done to maintain the same. I am unable to tell you where this business was delayed, but positively state that it left Savannah on time and should have reached New York on time."

The suit was based solely on the special contract alleged to have been made between the plaintiff and the defendant, to the effect that the defendant would transport from Savannah to New York in 43 hours the products of the plaintiff's truck farm; and the court below properly charged the jury, if such special contract was not made, there could be no recovery on the part of the plaintiff. Hence, if it be determined that no special contract as alleged was in fact entered into between the parties, it will be unnecessary to consider any other points made in the record. The question here involved is not the construction of a contract, but whether or not any special contract was made of the kind alleged; and this is to be ascertained from the circumstances surrounding the case and by the application of the rules of law for determining whether or not a contract between the parties was made. There is no presumption either way; but the plaintiff having declared upon a special contract, the burden is upon him to affirmatively establish its existence.

There is much testimony on the part of the plaintiff, to the effect that he never agreed with the defendant that it need not transport the goods within the 43 hours; that he would not have shipped them unless he had understood that it was to transport them within this time; and that he never understood from anything said by the defendant's agents that there was any doubt or question about their maintaining the schedule of 43 hours. There was likewise much testimony on the part of the agents of the defendant, that they could not have made the special contract alleged; that they

were without authority to make it; that there was no way of making
certain the particular time between Savannah and New York, and
that no railroad company would make such a contract, because of
the numerous causes for unavoidable delay. But the determina-
tion as to whether or not any special contract was made must de-
pend mainly upon what actually occurred between the parties.
The plaintiff testified that Wright, the superintendent of the de-
fendant company, told him "they had a schedule from Savannah
to New York in 43 hours; . . that they expected to maintain
that schedule of 43 hours from Savannah to New York." The
statement by defendant that it had a schedule of 43 hours certainly
would not involve a guarantee that this time would be made. It
is a well-known fact that it is customary for railroad companies
to employ schedules in connection with the operation of their trains,
but the statement of what the schedule of a particular train is
does not involve a promise to maintain it other than to use the
diligence required by the law to do so. The fact that the defend-
ant's agents stated to the plaintiff that they "expected" to main-
tain the schedule certainly could not mean that they guaranteed
to maintain it. A statement made by one person to another, that
he expects to do a certain act, is a very different thing from mak-
ing an absolute promise or guarantee that he will perform such
act. To expect to do a thing simply means to look forward to
doing it with the anticipation, or belief, of its accomplishment.
The giving of information by a railroad company to a shipper as
to what is the schedule of a particular train, with the statement
that the company expects to maintain such schedule, is not the
making of any promise other than to perform the duty with respect
to such schedule which the law already imposes.

After the defendant's agent made the statement that his com-
pany had this schedule and expected to maintain it, the plaintiff
said, "43 hours is a quick time; if you give me within 54 hours,
that will be time enough for me; that will be time enough to reach
the market." It does not appear from the plaintiff's testimony
that the defendant's agents made any reply to this remark, but it
could not be inferred from the silence of the defendant that it
was undertaking to guarantee the time of transportation to be 43
hours, or 54 hours. Taking the whole conversation together, the
meaning was that the defendant was giving the plaintiff informa-

tion as to the schedule of the train on which the shipments were to be made, and stating the expectation that it would maintain that schedule. See *Ragsdale* v. *Shipp,* 108 *Ga.* 817 (34 S. E. 167), where it is held, "The mere expression by a seller of his opinion or belief will not constitute him a warrantor." Wright, the superintendent of the defendant company, wrote the plaintiff a letter after the first shipment, in which he stated: ."As stated to you in conversation while in my office sometime ago, we have a 43 hours schedule to New York, and of course everything possible is done to maintain the same." The statement that the defendant would do everything possible to maintain the schedule does not involve a guarantee of its maintenance. The guarantee of making 43 hours time is a very different proposition from the doing of everything possible to make such time. The plaintiff does not undertake to testify to anything said by the defendant's agents guaranteeing the time of the shipments to be 43 hours. He testified, "I would not have shipped by them unless I had some idea upon the time that my goods would arrive at the market." The defendant's agents expressly denied guaranteeing any time, but said that they were simply giving the plaintiff information as to the advertised schedule and their expectation that this schedule would be maintained and everything possible would be done to maintain it. See International & G. M. R. Co. *v.* Wentworth, 87 Tex. 311 (28 S. W. 277), where it was decided: "Statements by the commercial agent of a common carrier, duly authorized to solicit shipments of freight, that the time consumed in the transportation of certain live stock will be four days, and that there will be no delays, do not constitute an express contract on the part of the carrier to ship and deliver in that time." See also Strohn *v.* Detroit & M. R. Co., 23 Wis. 126 (99 Am. D. 114), where it was held, "A mere statement by the agent, that the ordinary time for transportation over the proposed route is a certain number of days, does not constitute an agreement to carry in that time."

It is our opinion, after a careful consideration of all the testimony delivered upon the trial of the case, that the conclusion was not authorized that any special contract was made by the defendant to carry the shipments of the plaintiff from Savannah to New York within 43 hours; and the judgment of the court below is

*Reversed. All the Justices concur.*