**HEISKELL v. FURNESS, WITHY & CO., Limited.**

(Circuit Court of Appeals, Second Circuit. January 5, 1925.)

No. 123.

**1. Shipping ⊜⟹118—Owner of cargo held to assume risk of delay under contract of affreightment; "owner's risk of delay."**

The phrase "owner's risk of delay," as used in a contract of affreightment specifying steamer or steamers expected to sail last half July/August, *held* to mean that owner of intended cargo, not owner or charterer of ship, assumed risk of delay.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Owner's Risk.]

**2. Shipping ⊜⟹118 — Contract of affreightment, designating time steamer was "expected to sail," held to give cargo owner no cause of action for loss of contract of sale because of delay beyond expected sailing date.**

Where contract of affreightment specified steamer or steamers "expected to sail" from designated port "last half July/August. * * * Owner's risk of delay," the fact that steamer sailed from designated port some two or three weeks after expected time *held* to give owner of cargo no cause of action for damages for loss of contract of sale due to delay.

In Error to the District Court of the United States for the Southern District of New York.

Action by Lamar Heiskell, as trustee in bankruptcy of F. W. Brode & Co., against Furness, Withy & Co., Limited. Judgment for defendant, and plaintiff brings error. Affirmed.

By this action Heiskell attempts to recover damages for an alleged breach of contract between the bankrupt Brode and defendant.

In July, 1919, Brode in writing "engaged * * * for steamer or steamers of Virginia Line to arrive, expected to sail from Newport News last half July/August * * * room for 500 long tons meal bagged. Owner's risk of delay."

The Virginia Line was a name under which defendant operated chartered cargo boats.

On July 7th defendant declared steamship Eibergen as the vessel that would furnish Brode's tonnage.

After Brode had secured this tonnage, he sold enough meal to take it up in London, but to fulfill this sale contract he had to ship the meal from the United States during July or August, 1919.

The Eibergen did not arrive in nor sail from Newport News during the last half of July or during August. There was no evidence that this delay was caused or contributed to by any act of defendant's or that it was the fault or neglect of defendant.

On or about the 18th of September, 1919, the Eibergen was in and did sail from Newport News, and Brode delivered on board peanut meal to an amount substantially corresponding to his reserved tonnage.

He received a bill of lading therefor, which on its face showed "Shipper's weight" only, and that 129 sacks were in dispute, the bags containing the meal were old, and the contents were sifting.

The goods were carried to London, discharged on lighters for which defendant had no responsibility, and when a month later they were placed on dock, Brode asserted that there was a shortage compared with the aforesaid shipper's weight. He also lost his sale, apparently because shipment from Newport News or other American port had not taken place until after the middle of September.

The complaint sets forth in three causes of action:

(1) That defendant should pay for the loss of Brode's contract for the sale of peanut meal because the Eibergen had not sailed before the end of August, 1919.

(2) That defendant should pay for the alleged shortage of meal above described.

(3) That defendant should reimburse Brode $608.61 excess freight charges paid through "inadvertence and mistake."

At trial the court dismissed the first and second causes of action and directed judgment in favor of plaintiff for $66.21 on the third cause of action. To judgment accordingly plaintiff took this writ.

Neil P. Cullom, of New York City (Neil P. Cullom and Hobart S. Weaver, both of New York City, of counsel), for plaintiff in error.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Cletus Keating and James H. Herbert, both of New York City, of counsel), for defendant in error.

Before HOUGH and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). The main purpose of this action was to recover special damages for the loss of Brode's sale of peanut meal in England; and much time has been devoted to showing that such damage was recoverable.

But that question is not reached until plaintiff has shown a breach of contract on defendant's part giving rise to any damage claim at all.

[1] The written contract between these parties (supra) was at "owner's risk of delay." We notice this phrase because it was incidentally considered upon a motion in the District Court on the pleadings herein. The opinion on that motion is reported as Brode v. Furness, 1923 A. M. C. 310,[1] and it is therein said that in this contract "owner's risk of delay" meant ship owner's risk. This holding cannot be approved. To say that defendant (the chartered owner of Eibergen) took the risk of delay makes of the phrase quoted a meaningless addition to this written contract. Just in so far as promptitude was an essential portion of this agreement, the ship owner necessarily took the risk of whatever delay arose from causes not excepted therein. The interpretation given below adds nothing to the meaning or content of the agreement.

But if the owner who takes the risk of delay is held to be the owner of the intended cargo, the phrase has a meaning, in that it distinctly defines and in part limits the right to tonnage created and conferred by the contract itself. This matter is noted because of the report, for we do not regard it as dispositive of this case.

[2] As events occurred, the vital portion of this contract is that Brode received no more than a certain amount of space on a vessel that was "expected to sail" before the end of August.

The question presented is: What was the obligation of the defendant under such a contract?

---

[1] Mack, Circuit Judge. According to the pleadings, the parties entered into a contract of affreightment on July 3, 1919, which contained the following provisions:

"Engaged by authority of Messrs. F. W. Brode & Co., Memphis, Tennessee, for steamer or steamers of Virginia Line to arrive, expected to sail from Newport News and Norfolk, last half July-August Seaboard Classed A1 for London.

"When steamer is named in position to fulfill this contract, shipper to accept same and agent's guarantee to cease.

"Owner's risk of delay.

"Storage charges at Seaboard (if any) account shippers or owners of goods.

"In consideration of steamer applying for freight traffic committee G. O. C. permits, it is agreed that any expense for demurrage or storage is to be paid by shippers.

"This contract is made subject * * * to terms of bills of lading now in use by the steamship line or lines, and it is further conditioned upon the continuance of the steamship company's service and the sailing of its steamers."

The first cause of action is for damages due to defendant's delay in furnishing a named vessel during the last half of August. Paragraph 25 of the answer, after setting out the clause in the bill of lading excepting either party from liability "for any interference with the performance of the contract herein contained which is caused by strikes," alleges, as grounds of the steamship's delay in reaching the loading port at the time specified in the contract of affreightment, a general strike in England. It then proceeds to deny that the delay was occasioned by defendant's negligence, and charges that it was entirely due to the said strike within the exception of the contract of July 3, 1919, and bill of lading dated September 18, 1919, and that by reason of the terms, conditions, and exceptions contained in the contract of July 3, 1919, and the bill of lading dated September 18, 1919, plaintiff assumed risk of delay and defendant was not liable for the steamer's late arrival.

Even though the terms of the contract of July 3d are set forth in earlier paragraphs of the answer, this is the only one in which the defense of strikes is asserted. By its terms, the defense is not limited to the provisions of the bill of lading, considered either alone or as incorporated in the contract of July 3d, by reason of the last clause thereof. It asserts the defense as based upon the provisions both of the July contract and of the bill of lading. But unless the strike provisions of the bill of lading are not merely incorporated in the July contract by virtue of the last-quoted clause thereof, but fairly interpreted, mean that a delay before as well as after shipment is excused by strikes, neither the July contract nor the bill of lading nor both together furnish such a defense. For the words in the July contract, "Owner's risk of delay," cannot mean that the cargo owner takes the risk of delay, howsoever caused, in the ship's arrival; this would practically nullify the contract itself as it is without any limitation. Furthermore, in other parts of the contract, when the shipper or owner of goods is referred to, he is designated not as "owner," but as "shipper" or as "owner of cargo." Owner alone clearly means shipowner.

Moreover, the final condition of the July contract, "upon the continuance of the steamship company's service and the sailing of its steamers," does not mean that performance is conditioned on each steamer, or the steamer eventually named to the shipper, not only sailing but sailing in proper time, whether with or without an exception because of the owner's fault or neglect; it refers to a general situation that the company is continuing its business of sailing its steamers. That condition was met here.

On the construction of the strike clause in the bill of lading, I agree entirely with plaintiff's contention that by its very terms it is limited to strikes causing delay after the bill of lading becomes operative by reason of delivery of the goods to the carrier. It offers no defense for delay in furnishing the vessel.

Plaintiff's motion to strike out paragraph 25 will be sustained.

Plaintiff has treated the matter as if the Eibergen's failure to sail during August at latest was a breach of contract made, and to this we cannot agree.

The assumpsit sued on is not that any vessel would sail in August, but that a vessel was expected to sail in that month, and the two phrases are not equivalent. Undoubtedly this tonnage agreement is a mercantile contract, and as such to be interpreted in accordance with its own language and not according to "refined constructions which are intelligible only to lawyers, and scarcely to them." Lowber v. Bangs, 2 Wall. 728, at 736, 17 L. Ed. 768; Dorrance v. Barber (C. C. A.) 262 F. 489. And when it is observed that not only is the promise distinctly that a vessel is expected to sail within a given period, but that the whole venture is at owner's risk of delay, it is evident that the parties contemplated some uncertainty in Eibergen's sailing. Yet in the face of this contemplation of parties, plaintiff in effect treats the document as one wherein time is of the essence.

This is perhaps generally true in mercantile contracts where "promptitude in the fulfillment of engagements is the life of commercial success." Lowber v. Bangs, supra, page 737. But in this instance defendant never made the promise asserted in the complaint herein, to wit, that it would "make available to plaintiff during the months of July and August, 1919, a ship or ships." The promise was quite different, as above set forth.

Bold v. Raymer, 1 M. & W. 343, is a case showing a somewhat similar transaction. The action was upon bought and sold notes, one of which contained the statement that the goods bought and sold were "expected to arrive" on a certain ship "about November or December next." A distinguished court held that the words "expected to arrive" made no contract, but were a mere representation. (For other cases, see Words and Phrases, sub. nom Expect.)

Thus the representation was in effect that Eibergen was expected to sail not later than August, and there was no contract that she would sail in August. If the representation had been false, and when it was made there was no reasonable expectation of its fulfillment, doubtless an action would lie for such false representation. And if such expectation really existed when representation was made, doubtless also any act on the part of the maker of the representation causing or contributing to its frustration would be likewise actionable.

But as above set forth, there is no evidence showing or tending to show that the representation was not made in good faith, and it is substantially admitted that delay on the part of the Eibergen was due to a widespread strike in England, to which assuredly defendant had not contributed and for which it was not responsible.

Nothing is left of plaintiff's case except the bald fact that Eibergen sailed from Newport News between two and three weeks after her expected time. We hold that this gave rise to no cause of action in favor of Brode.

As to the second cause of action, we agree with the court below that the evidence of shortage occurring while on shipboard, or caused by defendant, was insufficient to go to the jury.

Failure of the second cause of action prevents any further recovery upon the third.

Judgment affirmed, with costs.