INSURANCE CO. OF NORTH AMERICA v. ROSENBERG et al.

Circuit Court of Appeals, Second Circuit.
April 9, 1928.

No. 263.

1. Insurance ⊚⇒424—Entry in rowdy fashion into clothing manufacturer's loft by five men, who poured acid on garments, held "riot attending strike," within insurance policy, notwithstanding absence of tumult or disturbance; "riot" (Penal Law N. Y. § 2090).

Entry into clothing manufacturer's loft by five men in rowdy fashion, two of whom poured acid on garments, while three others kept watch, and one of whom intimidated employees with revolver, held to constitute "riot attending strike," within insurance policy, under Penal Law N. Y. (Consol. Laws, c. 40) § 2090, defining "riot," for, while tumult and violence are necessary elements of riot in accomplishment of lawful purpose, there is no necessity for tumult where gathering or assembling is to accomplish unlawful purpose.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Riot.]

2. Insurance ⊚⇒146(3)—Policy is liberally construed, to indemnify insured against loss parties intended to insure against.

Policy of insurance should be liberally construed, so that insured will be indemnified against loss which parties intended to insure against.

Appeal from the District Court of the United States for the Southern District of New York.

Action by Edward Rosenberg and another, composing the firm of E. & R. Rosenberg, against the Insurance Company of North America, to recover damages for breach of an insurance policy. To review a decree for plaintiffs, defendant brings error. Affirmed.

Cardozo & Nathan, of New York City (Edgar J. Nathan and William O. Robertson, both of New York City, of counsel), for plaintiff in error.

Kaminsky & Parnes, of New York City (David B. Kaminsky, of New York City, of counsel), for defendants in error.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The defendants-in-error held a policy of insurance contracted for with the plaintiff-in-error for $50,000 insurance "against all direct loss or damage caused by any of the following: (1) Riot; (2) riot attending a strike; (3) insurrection; (4) civil commotion; (5) explosion * * *" to the contents of their loft in the borough of Manhattan, city of New York. They showed that on the 16th of July, 1925, seven men, armed with revolvers and chemicals, entered the loft occupied by them, terrorized their employees then in the premises, and saturated the overcoats, suits, and piece goods used in their business with chemicals, doing damage to the extent which is now stipulated to be the sum of $53,416.75. The goods were later sold and the sum of $19,593.67 realized, leaving a loss of $33,823.08, five-sixths of which is sued for in this action. The defendants-in-error had insurance in another company which covered the other one-sixth of the loss.

The defendants-in-error were engaged in manufacturing clothing in Philadelphia, where they also occupied a loft. A strike in the garment industry began in April, 1924, and continued down to and past the date of this occurrence. The defendants-in-error

were involved in this strike. Representatives of the union sought to persuade them to sign up with the union, saying, if they did not, the union would put them out of business. On June 23, 1925, the defendants-in-error procured an injunction in Philadelphia restraining the strikers from interfering with their employees.

The loft occupied by the defendants-in-error in New York City was divided into an office, showroom, shipping room, and stockroom and was on the third floor of the building. This occurrence took place about 12:30 in the daytime. At the time, three employees were engaged in hanging the stock, when five men entered in rowdy fashion, one man holding a revolver, calling to the employees, "If you just keep quiet and keep your mouths shut, we won't harm you." A man in charge of the shipping department was covered by one of the armed invaders and this employee testified, "There was nothing I could possibly do without endangering my life." Two of the invaders poured acid on the garments while three others kept watch. After their work of destruction, which lasted eight or ten minutes, they departed. A woman employee said she heard the noise of people running up the stairs, the door slammed open, and seven men rushed in. One rushed toward her and another toward an employee in the showroom. One pushed her into a chair and said, "Now you sit there if you know what is good for you; don't you dare talk or answer that phone while my men are here." This spokesman had one hand in his pocket, and the witness saw a gun sticking out. She said that the seven men stood about for from ten to fifteen minutes. They rushed in through a door marked "No admittance," and, after finishing their work, one said, "Now don't you go near that phone for ten minutes after we are gone or you will be full of lead before you know it." No attempt was made by any employee to use the telephone, and no one attempted to summon help or to make an outcry. They were intimidated and made no resistance, being obliged to submit to the orders of these armed ruffians.

[1] The sole question we have to determine is whether this occurrence constituted a riot or a riot attending a strike. The amount of the loss has been agreed upon. The facts as to the occurrence are not in dispute. The New York Penal Law (Consol. Laws, c. 40) § 2090, defines a riot to be:

"Whenever three or more persons, having assembled for any purpose, disturb the public peace, by using force or violence to any other person, or to property, or threaten or attempt to commit such disturbance, or to do an unlawful act by the use of force or violence, accompanied with the power of immediate execution of such threat or attempt, they are guilty of riot."

Blackstone says that:

"A riot is where three or more persons actually do an unlawful act of violence either with or without common cause or quarrel, as if they beat a man * * * or do any other unlawful act with force and violence, or even do a lawful act as removing the nuisance in a violent and tumultuous manner."

The judicial dictionaries of Stroud and Burrill refer to a riot as an unlawful act committed with force or violence by three or more. It is to be noted that the writers distinguish between a riot to accomplish a lawful purpose and a riot to accomplish an unlawful purpose. When the accomplishment of a lawful purpose, such as the removal of a nuisance, amounts to a riot, tumult and violence are necessary elements. But where the gathering or assembling is to accomplish an unlawful purpose, the writers say, there is no necessity for tumult to cause the gathering to be a riot. It requires the federation of three or more to consummate an unlawful purpose, and an act with violence. What occurred when these armed men entered the loft and made declarations to terrorize the employees of the plaintiffs-in-error came well within these definitions of what is a riot. · They were engaged in the commission of an unlawful act. They intended to willfully destroy property which had been covered by this insurance and had every appearance of an intention to commit assault upon the persons of the employees if they resisted or attempted to protect the property. They were terrifying, threatening, and riotous. Commonwealth v. Runnels, 10 Mass. 518, 6 Am. Dec. 148; Marshall v. City of Buffalo, 50 App. Div. 149, 64 N. Y. S. 411; Id., 176 N. Y. 545, 68 N. E. 1119.

[2] It is argued, however, that the language of the insurance policy, given its ordinary meaning (Western Woolen Mill Co. v. Northern Assurance Co. [C. C. A.] 139 F. 637; Kean v. National Surety Co., 241 N. Y. 252, 149 N. E. 849), does not permit this occurrence to be classed as a riot because there is no tumult or disturbance. It is said that the menacing attitude and threatened assault by these persons, who were bent upon malicious mischief and sabotage, may not be deemed creating a disturbance or tumult threatening the public peace. There was a common pur-

pose displayed by more than three people who were bent upon the use of force, if necessary, against any person who would oppose the execution of their purpose. There must be a fair and reasonable interpretation of the risks the parties intended to cover by this contract of insurance and to hold that what occurred was not a riot within the acceptation of that term, and as defined by law-writers and decisions, would be to twist words and render plain meanings nugatory. The riot also was carried on in furtherance of the motives and machinations of the strikers. It was a riot attending a strike. Undoubtedly the parties who contracted intended to insure against just what occurred here. This policy of insurance should be liberally construed so that the insured will be indemnified against loss, which the parties intended so to insure against. Grace v. Central Ins. Co., 109 U. S. 282, 3 S. Ct. 207, 27 L. Ed. 932; Heiskell v. Furness, Withy & Co. (C. C. A.) 4 F.(2d) 977; Fireman's Fund Ins. Co. v. Globe Navigation Co. (C. C. A.) 236 F. 618.

Within these definitions and rules of law referred to, the court below properly held that there was no issue of fact for the jury and the direction of a verdict for the plaintiff-in-error was fully warranted.

Judgment affirmed.