## PETROLEUM EXPORT CORPORATION et al. v. KERR S. S. CO., Inc.

Circuit Court of Appeals, Ninth Circuit.
May 27, 1929.

Rehearing Denied July 1, 1929.

No. 5677.

Alfred L. Black, Jr., and Carey McWilliams, both of Los Angeles, Cal., for appellants.

Ira S. Lillick and Lillick, Olson & Graham, all of San Francisco, Cal. (Ira S. Lillick, Chalmers G. Graham, and John C. McHose, all of San Francisco, Cal., on the brief), for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. This case was submitted to the court below on an agreed statement of facts. Some time prior to February 6, 1926, the Petroleum Export Corporation had sold 50,000 cases of kerosene to be shipped from the port of Los Angeles in February or March and was negotiating with the Kerr Steamship Company, Inc., for the transportation of the shipment from the latter port to the port of Shanghai, China. The shipper was informed by the carrier that the motorship Silverpine was due to arrive at the port of Los Angeles about April 2, and the purchaser assented to a shipment by that date. A contract of affreightment was thereupon entered into containing the provision, "Expected time of loading, late March/early April." On or prior to March 30 the carrier notified the shipper that the vessel would not be available for loading at Los Angeles until after the middle of April, and the purchaser, upon learning of the delay, rescinded the contract of sale. The shipper then notified the carrier that it intended to cancel its contract of affreightment. There was further correspondence between the parties having no material bearing on our present inquiry. It was also stipulated that at the time the affreightment contract was entered into the vessel named therein was in such position that she might reasonably be expected to load at Los Angeles within the time provided in the contract; that the expectation of the carrier and its agents that the vessel would be ready for loading in late March or early April was an honest one and was based upon reasonable grounds; that any delay in the arrival of the vessel and the loading of the cargo at Los Angeles was not the result of any negligence or fault on the part of the carrier or its agents; and that the carrier at all times used every means known to get the vessel to the port of Los Angeles within

the time provided in the contract. The vessel did not arrive at the port of Los Angeles until April 21, and was then unable to arrange for a full cargo to take the place of the cargo covered by the contract in suit. The present libel was thereupon filed to recover damages for breach of the affreightment contract, and from a decree in favor of the libelant the respondent has appealed.

■ If the carrier had definitely agreed that the time of loading should be late March or early April, it will perhaps be conceded that a delivery of the vessel for loading on April 21 would not satisfy the requirements of the contract. But the carrier did not so agree. The language of the contract is "expected time of loading," and the expected does not always happen. Webster defines "to expect" as, to look forward to as certain or probable. A definite statement as to the time of loading would amount to a warranty, while the expected time of loading amounts to nothing more than a representation. Thus in Heiskell v. Furness, Withy & Co. (C. C. A.) 4 F. (2d) 977, the language of the contract of affreightment was "expected to sail from Newport News and Norfolk last half July/August," but the ship did not in fact sail from Newport News until two or three weeks after the expected time. In construing this contract the Circuit Court of Appeals for the second circuit, speaking through Judge Hough, said:

"Plaintiff has treated the matter as if the Eibergen's failure to sail during August at latest was a breach of contract made, and to this we cannot agree.

"The assumpsit sued on is not that any vessel would sail in August, but that a vessel was expected to sail in that month, and the two phrases are not equivalent. Undoubtedly this tonnage agreement is a mercantile contract, and as such to be interpreted in accordance with its own language and not according to 'refined constructions which are intelligible only to lawyers, and scarcely to them.' * * * And when it is observed that not only is the promise distinctly that a vessel is expected to sail within a given period, but that the whole venture is at owner's risk of delay, it is evident that the parties contemplated some uncertainty in Eibergen's sailing. Yet in the face of this contemplation of parties, plaintiff in effect treats the document as one wherein time is of the essence.

"This is perhaps generally true in mercantile contracts where 'promptitude in the fulfillment of engagements is the life of commercial success.' * * * But in this instance defendant never made the promise asserted in the complaint herein, to wit, that it would 'make available to plaintiff during the months of July and August, 1919, a ship or ships.' The promise was quite different, as above set forth.

"Bold v. Raymer, 1 M. & W. 343, is a case showing a somewhat similar transaction. The action was upon bought and sold notes, one of which contained the statement that the goods bought and sold were 'expected to arrive' on a certain ship 'about November or December next.' A distinguished court held that the words 'expected to arrive' made no contract, but were a mere representation. * * *

"Thus the representation was in effect that Eibergen was expected to sail not later than August, and there was no contract that she would sail in August. If the representation had been false, and when it was made there was no reasonable expectation of its fulfillment, doubtless an action would lie for such false representation. And if such expectation really existed when representation was made, doubtless also any act on the part of the maker of the representation causing or contributing to its frustration would be likewise actionable.

"But as above set forth, there is no evidence showing or tending to show that the representation was not made in good faith, and it is substantially admitted that delay on the part of the Eibergen was due to a widespread strike in England, to which assuredly defendant had not contributed and for which it was not responsible.

"Nothing is left of plaintiff's case except the bald fact that Eibergen sailed from Newport News between two and three weeks after her expected time. We hold that this gave rise to no cause of action in favor of Brode."

The appellee attempts to distinguish this case from the Heiskell Case because the contract there involved provided that delay was at the risk of the owner; but that provision was not the basis for the decision. The court below had construed the term "owner" to mean the owner of the ship, and not the owner of the cargo; but the appellate court held that this construction was erroneous. This seems to have been the principal reason for referring to that provision of the contract at all, for in stating the question for decision the appellate court said:

"As events occurred, the vital portion of this contract is that Brode received no more than a certain amount of space on a vessel that was 'expected to sail' before the end of August.

"The question presented is: What was the

obligation of the defendant under such a contract?"

For other cases construing the meaning of the term "expected," see Johnson's Adm'r v. McCune, 27 Mo. 171, and Atlantic Coast Line R. R. Co. v. Wells, 130 Ga. 55, 60 S. E. 170.

In Corkling v. Massey, L. R. 8 C. P. 395, cited and relied on by the appellant, the provision of the agreement was that the vessel was expected to be at Alexandria about the 15th of December, and it was held that this was a warranty and not a representation. But in that case the breach alleged was, not that the ship was not at Alexandria about the 15th of December, but that she was not expected to be at Alexandria on that date and was in such part of the world and under such engagements that she could not perform her other engagements and arrive at Alexandria by that date, and the court held that the representation was a warranty that the ship was *expected* to be at Alexandria about the date named, not a warranty that she would be there in fact.

In Sanders v. Munson (C. C. A.) 74 F. 649, cited by the appellant, the charter party provided for delivery of the ship about April 10, to be used in the banana trade, and it was held that delivery on April 27 did not satisfy the requirements of the contract. The wide difference between the two contracts is obvious.

■■ The present case is not free from difficulty and involves some hardship. No doubt, the appellant intended to contract for space to ship the kerosene within the time provided in its contract of sale, but unfortunately it failed to do so, and the court cannot make a new contract for it. It offered testimony tending to show that it would not have entered into the affreightment contract were it not for the assurance given that the ship would arrive at Los Angeles about April 2; but this testimony would vary the terms of the written contract because, as already stated, the agreement that the vessel was expected to arrive in the port of Los Angeles on a certain date was not the equivalent of an agreement that she would in fact arrive on that date.

The appellant further objected to that portion of the agreed statement of facts to the effect that the appellee had used every effort to get the ship to Los Angeles on time and was guilty of no negligence in failing so to do. The facts set forth in that branch of the stipulation were no doubt material, but whether the burden was on the appellee to establish them, or on the appellant to prove the contrary, we need not inquire.

■ Certain stockholders of the Petroleum Export Corporation were made parties respondent, and a decree was awarded against three of them in "the sum of sixty-five hundred dollars and in the amounts respectively reported due from each and all of them, together with costs to be taxed." This part of the decree is, we think, void for uncertainty, and inasmuch as the liability of all three stockholders is only $3.12, the amount involved is entirely too trifling to merit consideration from this court.

The decree will therefore be modified by striking therefrom all reference to the three stockholders, and as thus modified the decree is affirmed, with costs.