L. N. JACKSON & Co. INC., Plaintiff, *v.* SEAS SHIPPING COMPANY, INC., Defendant.

Supreme Court, Trial Term, New York County, June 8, 1945.

*Copal Mintz* for plaintiff.

*Paul L. Murphy* and *Frank V. Barns* for defendant.

LEVEY, J. In this action the plaintiff seeks to recover, as damages, certain profits representing the difference between the contract and market prices of 1,000 tons of copra which, as plaintiff alleges, the defendant had failed to load, contrary to agreement, on the S.S. *Tropic Star,* at the port of Beira, East Africa, on November 25, 1941, and transport to New York.

The Norwegian Shipping and Trade Mission had authorized the defendant, as a berth agent, in or about the early part of October, 1941, to book freight for the afore-mentioned S.S. *Tropic Star,* scheduled to sail from the said port of Beira during November, 1941, but advised the defendant at the same time that the vessel was then laid up in Durban, distant about eight hundred miles, awaiting repair parts from England.

The defendant, anticipating probable delay, booked the cargo for the plaintiff through the latter's broker, with the express provision that the ship was " expected to be ready to load at Beira on November 25th, destination New York." As a matter of fact, due to war conditions, and the resultant difficulties in the delivery of the parts, the vessel actually did not reach Beira until early February, 1942.

In the meanwhile, however, the defendant, justifying its fears, was notified of unavoidable delay by representatives of the ship-owner and in turn communicated with the plaintiff to this effect on November 14 and again on December 4, 1941. The plaintiff thereupon arranged not only for the extension of its letter of credit, payment under which was conditioned specifically upon loading at Beira with no obligations or expenses to be incurred otherwise, but also for a postponement of the shipment to the Beira dock for loading.

Then occurred the fateful Pearl Harbor incident and every available facility was employed and requisitioned by government agencies to expedite delivery of those strategic materials deemed necessary for our defense and war effort. In this connection, the United States Maritime Commission on December 22, 1941, confirmed subsequently on January 2, 1942, ordered

the immediate cancelation of the carriage of copra in the following telegrams:

" TROPIC STAR

Due to arrangements for critical strategic commodities please cancel booking 1,000 tons copra substitute sisal wool. Confirm

(signed) A. E. KING
U. S. Maritime Commission."

(Defendant's Ex. L.)

" TROPIC STAR

Copra can only reiterate urgent defense requirements make necessary carriage of essential commodities accordance our previous instructions.

(signed) A. E. KING
U. S. Maritime Commission."

(Defendant's Ex. N.)

Plaintiff now maintains that the original contract obligated the defendant to have the S.S. *Tropic Star* at Beira on November 25, 1941, and hence the defendant was in default on December 22, 1941, the date on which the United States Maritime Commission first directed the cancelation.

Defendant's letter of November 7, 1941, does not warrant any such contention since it simply stated that the ship was " expected to be ready to load at Beira on November 25th, destination New York." At most this constituted a representation of a belief or expectation. Certainly the defendant is not liable as a guarantor if the ship's arrival was delayed, as anticipated and provided for by the contracting parties. (*Eitingon-Schild Co., Inc.*, v. *Friedman*, 213 App. Div. 663; *Johnson's Adm'r.* v. *McClune*, 27 Mo. 171; *Petroleum Export Corporation* v. *Kerr S. S. Co.*, 32 F. 2d 969, 970; *Atlantic Coast Line Railroad Co.* v. *Wells*, 130 Ga. 55.)

After weighing all the evidence and exhibits, with particular regard to the then prevailing wartime shipping conditions, and to the wording of the original contract which stipulated the probability of delay, I have reached the conclusion that the defendant was not in default at any time prior to December 22, 1941.

I further find that the defendant was justified in complying with the order of the United States Maritime Commission, the latter acting in conformity with the provisions of the United States Ship Warrants Act (U. S. Code, tit. 50, Appendix, § 1281 *et seq.*). Refusal to obey the cancelation order would have subjected the owner not only to severe penalties but also would have cast a sinister reflection on the attitude of the defendant and the owner toward our war effort.

This direct intervention by a government mandate in one of the most perilous periods in our nation's history embodied every element significant and essential for a complete frustration so as to excuse, without question, performance on the part of the defendant. (*Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467; *Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290; *Nitro P. Co.* v. *Agency of C. C. and F. Co.*, 233 N. Y. 294; *Matter of Gunze Silk Corp.* [*Rudolph Corp.*], 266 App. Div. 541; *Matter of Kahn & Feldman, Inc.* [*Rothschild*], 265 App. Div. 470, affd. 290 N. Y. 781.)

Moreover, the record clearly establishes that the defendant acted as an agent for the Norwegian Shipping and Trade Mission and not as a principal.

The only contact that the plaintiff had with the defendant throughout the negotiations was through one William J. Byrnes, president of W. J. Byrnes & Co., who consummated the agreement under review, on behalf of and at the request of the plaintiff.

Byrnes frankly admitted that he understood " that the Norwegian Shipping and Trade Mission was either the owner or represented the owners and that the Seas Shipping Co. were agents for the vessel " and plaintiff's counsel also conceded in the course of the trial that his client was charged with notice or knowledge that the S.S. *Tropic Star* was a Norwegian vessel. (*Ford* v. *Grand Union Co.*, 268 N. Y. 243; *Hurley* v. *John Hancock Mut. Life Ins. Co.*, 247 App. Div. 547; also *Ell Dee Clothing Co.* v. *Marsh*, 247 N. Y. 392.)

Judgment is rendered for the defendant. Findings of fact and conclusions of law signed.