THE PEOPLE OF THE STATE OF NEW YORK ex rel. MORRIS B. EVENS, Appellant, *v.* ALBERT E. KLEINERT, as Superintendent of the Bureau of Buildings of the Borough of Brooklyn, City of New York, Respondent.

Second Department, June 29, 1922.

Municipal corporations — city of New York — application for peremptory mandamus order requiring superintendent of bureau of buildings to cancel revocation of building permit — after permit issued owner of land commenced building and incurred considerable expense — superintendent revoked permit on ground that clean set of blueprints was not filed and in opposing application also claimed that plans filed violated Tenement House Law — order should be granted — owner acquired vested right after commencing building — no ground for revocation under Code of Ordinances shown — tenement house department approved plans and court, in action to enjoin building, decided building did not violate Tenement House Law — not duty of superintendent to take part in private disputes of property owners — superintendent has no arbitrary power to cancel permit.

A peremptory mandamus order requiring the superintendent of the bureau of buildings, borough of Brooklyn, city of New York, to cancel an order made by him which canceled a building permit previously issued by him, and also to cancel his revocation of said permit, should be granted, where it appears that the permit was regularly issued after approval of the plans by the tenement house department and by said superintendent; that after it was issued the petitioner commenced building and incurred considerable expense; that the original ground assigned by the superintendent for the cancellation of the permit was because corrections were made on the plans filed instead of filing duplicate plans printed from the corrected tracings; that later in opposing the application for the mandamus order, the superintendent alleged that the plans filed called for a building which would violate the Tenement House Law; that there was no ground for the revocation of the permit under the Code of Ordinances of the City of New York, and that in an action to enjoin the erection of

the building the court decided that the proposed building did not violate the Tenement House Law.

The petitioner, after entering in good faith upon the construction of the building under the permit, acquired a vested right of which the superintendent had no power to deprive him.

It is not the duty of the superintendent of the bureau of buildings to take part in the private disputes of property owners in their efforts to avoid the erection of apartment houses in the vicinity.

A building permit should not be issued without careful deliberation, but when issued and work is actually commenced in reliance thereon, the superintendent of the bureau of buildings has no arbitrary power of revocation.

APPEAL by the petitioner, Morris B. Evens, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 20th day of March, 1922, denying his motion for a peremptory mandamus order requiring the superintendent of the bureau of buildings, borough of Brooklyn, city of New York, to forthwith cancel an order made by said superintendent on February 9, 1922, which canceled a building permit previously issued by said superintendent and also to cancel his revocation of the said permit and the plans recited therein.

*Louis J. Altkrug,* for the appellant.

*William R. Wilson* [*John P. O'Brien, Corporation Counsel,* and *William B. Carswell,* with him on the brief], for the respondent.

KELLY, J.:

In December, 1921, the petitioner caused plans to be prepared for a seventeen-family apartment house to be erected upon certain premises owned by him in the borough of Brooklyn. On January 4, 1922, after approval of the plans by the tenement house department, he filed them with the superintendent of buildings and applied for a permit to construct the building. On February 8, 1922, the defendant approved the plans and issued the permit. The plans cost the petitioner $1,000. On February 7, 1922, he made a contract with one Lombardi to excavate the lot and dig trenches for the foundation at a cost of $1,050, the contract to take effect on the issuance of the permit. After the approval of the plans by the superintendent of buildings and issuance of the building permit, the contractor Lombardi obtained the necessary permit from the superintendent of highways to excavate and to drive over the sidewalk, and in accordance with the provisions of section 391 of the charter and the ordinances, the contractor deposited $50 as security for the restoration of the highway. (See Greater New York Charter [Laws of 1901, chap. 466], § 391, as amd. by Laws of 1916, chap. 496; Code of Ordinances, chap. 23, art. 9, § 91.)

On the same day the contractor commenced work with his laborers and trucks and excavated fifty loads of earth. The petitioner had also obtained estimates for stone, cement and gravel and was proceeding with the erection of the building, when on February 9 and 10, 1922, the superintendent of buildings without notice to petitioner or hearing revoked the building permit. This brought the building operations to a stop.

The reason assigned by the defendant for the cancellation, as stated in his letter to petitioner dated February 9, 1922, was " because the architect made corrections on the plans filed instead of filing duplicate plans printed from the corrected tracings. The plan examiner also made corrections as to lintels and piers on these plans without authority. Permit will remain cancelled until the duplicate plans printed from the corrected tracings are filed."

Thereafter upon application made to him by counsel for the petitioner, the superintendent refused to reinstate the permit.

The reason for this summary action of the superintendent is stated in the points filed by the corporation counsel to be the failure of the plaintiff after examination of the plans filed with the building department and the making of changes and corrections therein by the department to file new " clean and duplicate sets of blueprints with all the corrections printed direct from the tracings," as required by a general order of the superintendent of buildings then in force. And it is also stated that the plans and specifications as filed called for a building which would occupy more than seventy per cent of the area of petitioner's lot in violation of subdivision (b) of section 50 of the Tenement House Law (as amd. by Laws of 1921, chap. 218). This last objection was not the ground originally stated by the superintendent for his cancellation of the permit. The reason assigned by the superintendent in his original notice of cancellation was the failure to file a clean set of blueprints containing the alterations and corrections made by the building department prior to the issuance of the permit and this is the alleged " irregularity " referred to in the superintendent's affidavit in opposition to the motion. Before final submission of the papers the learned judge at Special Term permitted the superintendent to file additional affidavits in which it was alleged that petitioner's proposed building would occupy more than seventy per centum of the area of petitioner's lots and in which it was also alleged that certain property owners in the neighborhood had commenced an action against the petitioner to enjoin the erection of his apartment house upon the ground that it violated a restrictive covenant against such buildings, and because of the alleged violation of

48

the Tenement House Law as to space of ground to be occupied by the buildings. This action was pending at the date of the argument and decision of petitioner's application for mandamus.

The petitioner alleges that his proposed building does not violate any restriction in the title or the provisions of the Tenement House Law, and urges that these are matters with which the superintendent of buildings was not concerned. And since the denial of petitioner's application for mandamus the litigation between petitioner and his neighbors has been tried upon the merits and decided in petitioner's favor. The trial court held that the proposed building did not violate the restrictive covenants and also said, " I do not think defendant's proposed building will be a violation of the Tenement House Law as to space of ground to be used. He does not propose to use more of his ground than the Tenement House Law permits. In any event, that is a matter for the Tenement House Department and not the court." (*Blank* v. *Evens,* opinion by LAZANSKY, J., N. Y. L. J., May 26, 1922.)

The courts are slow to interfere with the administrative acts of city officers. They are necessarily vested with authority to supervise and direct the innumerable details of the business of the various departments. The supervision of building plans and specifications is a most important duty imposed upon the superintendent and should be exercised with scrupulous care. He is given the necessary authority to make changes and alterations in proposed plans and to refuse permission until the law and the lawful regulations of the department are complied with and we must assume that he performed his duty and that all these matters were examined carefully before the permit was issued. If it was necessary or desirable to have a clean copy of the blueprints and papers on file in his office before the permit was issued, that was not an unreasonable requirement, but it rested entirely in the hands of the superintendent. He might withhold his permit until the clean copy of the blueprints was filed with him. There is no suggestion in his replying affidavits that the builder in this case refused to assent to any changes or alterations in the plans made by the superintendent. On the contrary, he acceded to them and the application and plans were duly approved on February 8, 1922. The original letter of the superintendent on February 9, 1922, stated, " Permit will remain cancelled until the duplicate plans printed from the corrected tracings are filed," but on February tenth he notified petitioner that the permit was canceled and revoked and he refused to receive the duplicate plans from the corrected tracings which petitioner was ready to furnish. He insisted upon an entirely new application for a building permit, and

it appears that on February 10, 1922, through the activities of petitioner's neighbors who objected to his apartment house, the board of estimate had changed the zoning districts so as to make new requirements which would render the petitioner's plans prepared in December, 1921, and approved February 8, 1922, valueless and impracticable. I do not think the superintendent can lend himself to these quarrels to avoid the erection of apartment houses in localities where they may be objectionable to the owners of private residences nearby. Mr. Justice LAZANSKY said in his opinion in *Blank* v. *Evens* (*supra*): "It would be well, indeed, if the utilitarian were to give way to the æsthetic. But this is not a matter for the court." Neither is it a matter for the superintendent of buildings. His duties are important and onerous enough to occupy his full time without engaging in these outside matters. A building permit is an important thing. It should not be issued without care and deliberation, but when issued and work has actually commenced in reliance upon the permit, it is impossible to recognize any arbitrary power of cancellation and revocation in the superintendent. When the petitioner in good faith entered upon the construction of the building and incurred liabilities under the permit, he acquired a vested right therein of which the superintendent had no power to deprive him. (*City of Buffalo* v. *Chadeayne,* 134 N. Y. 163.) The Code of Ordinances of the City of New York (Chap. 5, art. 1, § 4, subd. 7), being the Building Code, provides as follows: "Revocation. The superintendent of buildings may revoke any permit or approval issued under the provisions of this article, in the case of any false statement, or any misrepresentation as to a material fact in the application on which the permit or approval was based." No such false statement or misrepresentation of a material fact in the application is shown in the replying affidavit of the superintendent. Indeed the allegation in petitioner's moving affidavit that the facts stated in the application were true and that neither petitioner nor his architect made any false statement or misrepresentation in the application, is not denied in the answering affidavit. The reference to the space to be occupied by the proposed building as contrary to the provisions of the Tenement House Law is clearly an afterthought. The tenement house department had approved the application and the court on trial of the action to enjoin the building has decided that the petitioner's building did not violate the Tenement House Law. The learned justice at Special Term in denying the motion for a mandamus order filed a memorandum in which he stated that the denial was in the exercise of discretion, and he said that the writ should not issue in support of unjust claims. We are loath to interfere with the exercise of discretion

by the justice at Special Term, but the suggestion that petitioner's claim is unjust is not supported by anything in the record before us. The learned justice probably referred to the action then pending in which it was sought to enjoin petitioner's building as a violation of some restrictive covenant. As already stated, since the decision at the Special Term the injunction action has been tried on the merits and the decision was in favor of the builder, the petitioner here.

The order denying the motion for peremptory mandamus order should be reversed on the law, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

BLACKMAR, P. J., JAYCOX, KELBY and YOUNG, JJ., concur.

Order denying motion for a peremptory mandamus order reversed on the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs. Settle order upon notice.