COLONIAL MOTOR COACH CORPORATION, Plaintiff, *v.* CITY OF
OSWEGO and Others, Defendants.

Supreme Court, Oswego County, April 2, 1926.

Corporations — transportation corporations — motor bus corporation —
action to restrain mayor of city of Oswego from signing resolution
revoking prior consent given plaintiff to operate motor buses in streets
— consent was given for ten years without reservation of power to revoke
— consent granted by city was contract conveying property rights to
plaintiff as soon as accepted — consent did not require formal acceptance
— acceptance shown by application to Public Service Commission for
certificate of convenience and necessity, purchase of motor bus and bus
route — granting of said consent was not subject to provisions of General
City Law, § 23, subd. 2, requiring three-fourths vote of common council
and sale at public auction — said consent was properly granted under
Transportation Corporations Law, § 26, and General City Law, § 20,
subds. 10 and 23 — injunction, restraining mayor from signing resolu-
tion of revocation, too broad which purports to authorize operation of
bus route without certificate of convenience and necessity.

A consent given by the common council of the city of Oswego to the plaintiff
authorizing it to operate a bus route over the streets of the city for a period of
ten years, which consent did not reserve to the city the right to revoke, con-
stituted a contract conveying property rights to the plaintiff as soon as accepted,
and the city does not have the power to revoke the same and deprive the plaintiff
of its property without compensation or without its consent.

The consent granted by the city of Oswego to the plaintiff, a motor bus corporation,
did not require formal acceptance, and, therefore, it was not necessary for the
plaintiff to show that the consent had been formally accepted, but actual accept-
ance of the consent was fully shown by proof that the plaintiff applied to the
Public Service Commission for a certificate of convenience and necessity, a
condition imposed by the consent as well as by law, that it purchased a motor
bus, and also purchased a bus route which would have been a competing route
if the plaintiff had not purchased it.

The granting of the consent was not void for failure to comply with subdivision 2
of section 23 of the General City Law, providing that a franchise belonging to or
in control of a city shall not be sold or leased except by a vote of three-fourths
of all the members of the common council, and that it shall be sold at public
auction, for that section of the General City Law does not apply to the situation
here which is governed by section 26 of the Transportation Corporations Law
requiring consent of local authorities and by subdivision 10 of section 20 of the
General City Law empowering the city to grant franchises or rights to use the
streets of the municipality, which power is not restricted in the method of its
exercise, and by subdivision 23 of section 20 which gives the city the right to
exercise all powers necessary and proper for carrying into execution all powers
granted by the provisions of that section. Furthermore, there was not a sale
of any franchise in this case, but the granting of a consent.

Accordingly, the city of Oswego did not have the right to pass a resolution revoking
the consent previously granted to the plaintiff, which had been accepted by the
plaintiff, and the plaintiff is entitled to an injunction restraining the mayor of
the city of Oswego from signing the resolution of revocation and restraining the

defendants from doing any act in contravention of the consent granted to the plaintiff, but the plaintiff is not entitled to an injunction which, in effect, would permit it to operate its motor buses without a certificate of convenience and necessity.

MOTION to continue injunction *pendente lite* granted in action by plaintiff to enjoin defendants from interfering with plaintiff's right to operate motor buses under consent granted pursuant to ordinance.

*George R. Fearon,* for the plaintiff.

*Joseph T. McCaffrey* and *Francis E. Cullen,* for the defendants.

EDGCOMB, J.  On May 25, 1925, the common council of the city of Oswego adopted an ordinance, which was afterwards approved by the mayor, giving to the plaintiff the necessary consent to operate a motor vehicle route between Oswego and Watertown, together with the vehicles to be used in connection therewith, upon and over certain named streets in the city, for a period of ten years.  There was no provision for the revocation of such permit or for a termination thereof before the expiration of the ten-year period.

On January 11, 1926, without any notice to the plaintiff, and without its knowledge or consent, the common council passed a resolution revoking, annulling and canceling its permission granted to the plaintiff the previous May.

Asserting that the consent had become a binding contract between the parties, and vested in the company certain indefeasible property rights, the plaintiff brought this action in equity to declare the acts of the defendants in attempting to rescind and revoke the consent of May 25, 1925, a violation of its rights, and, therefore, void and of no effect, and to enjoin the mayor from signing the resolution, and defendants from interferring with the operation of the buses over the specified route.

A temporary injunction was granted, with an order to show cause why it should not be continued during the pendency of the action.  Upon the return of said order to show cause this motion came on to be heard.

If the ordinance of May 25, 1925, vested in the plaintiff any property rights, its subsequent rescission was void and of no effect. No person or corporation can be deprived of his or its property without due process of law.  One's property rights, as well as his life and liberty, are guaranteed him by the fundamental law of the land.

Over a century ago in the infancy of American jurisprudence John Marshall, the great chief justice of the Supreme Court of the United States, in several far-reaching opinions laid down the doctrine which has ever since been followed, and will, I have no

doubt, be followed for all time, that when a statute became a contract, and absolute rights became fixed thereunder, such rights could not be divested by any subsequent statute, and that a grant absolute in its terms by its very nature amounts to an extinguishment of the right of the grantor. (*Fletcher* v. *Peck*, 6 Cranch, 87, 128; *State of New Jersey* v. *Wilson*, 7 id. 164; *Dartmouth College* v. *Woodward*, 4 Wheat. 518.)

This same principle has been followed and emphasized by numerous later cases, where it has repeatedly been held that a franchise or consent granted to a corporation, when accepted or acted upon, became property of which the grantee could not be deprived without due process of law, and without compensation. The following are but a few of such decisions: *Detroit* v. *Detroit Citizens' St. R. Co.* (184 U. S. 368, 394); *New Orleans Gas Co.* v. *Louisiana Light Co.* (115 id. 650); *Coast Line R. Co.* v. *City of Savannah* (30 Fed. 646, 648); *People ex rel. City of New York* v. *N. Y. R. Co.* (217 N. Y. 310, 318); *Lord* v. *Equitable Life Assur. Society* (194 id. 212); *City of Rochester* v. *Rochester R. Co.* (182 id. 99); *Ingersoll* v. *Nassau El. R. R. Co.* (157 id. 453, 463); *People ex rel. Woodhaven Gas L. Co.* v. *Deehan* (153 id. 528, 532); *City of Buffalo* v. *Chadeayne* (134 id. 163); *Suburban Rapid Transit Co.* v. *Mayor* (128 id. 510); *People* v. *O'Brien* (111 id. 1); *Mayor of Troy* v. *Troy & L. R. R. Co* (49 id. 657); *Milhau* v. *Sharp* (27 id. 611); *Huntington Traction Co., Inc.,* v. *Walker* (209 App. Div. 904); *City of New York* v. *Citizens Water Supply Co.* (204 id. 783; affd., 237 N. Y. 587); *People ex rel. Evens* v. *Kleinert* (201 App. Div. 751); *Rochester & Charlotte Turnpike Road Co.* v. *Joel* (41 id. 43); *Coney Island, F. H. & B. R. R. Co.* v. *Kennedy* (15 id. 588); *Lees* v. *Cohoes Motor Car Co., Inc.* (122 Misc. 373); *Matter of Walker* (84 id. 118); *Western Union Telegraph Co.* v. *City of Syracuse* (24 id. 338).

If a State cannot recall the past by subsequent legislation, certainly a city cannot do so by ordinance. Franchises are given and received upon the understanding that the grantee is protected by a contractual right from the very moment the grant is accepted, so long as its terms are complied with.

In *Lord* v. *Equitable Life Assur. Society* (*supra*) Judge VANN defines a special franchise (at p. 225) as: " The right granted by the public, to use public property for a public use, but with private profit, such as the right to build and operate a railroad in the streets of a city," and then adds: " Such a franchise, when acted upon, becomes property and cannot be repealed, unless power to do so is reserved in the grant, although it may be condemned upon making compensation."

While the defendants do not question the foregoing principle,

they insist that the consent of May twenty-fifth does not constitute a franchise, but rather a mere license, which has not ripened into a contract, and which has not vested any property rights in the plaintiff, and which can, therefore, be revoked by the grantor at pleasure. The defendants attempt to distinguish this grant from the ordinary franchise awarded to a railroad company, which carries with it the right, not only to operate cars in the public streets, but to place ties, rails and physical property permanently in the highway, and vests in the recipient an indefeasible easement to maintain and use such structures. Here it is said the grantee of the consent commits no purpresture, but simply uses the highway as any other traveler thereon does, and as he might do as a matter of right were it not for the statute.

To my mind it is not necessary to draw any fine-spun distinctions between a franchise and a consent, or to decide whether the ordinance of May 25, 1925, was technically one or the other. That resolution conferred a privilege upon the plaintiff to operate its buses over the streets named, without which it would have been unlawful for the plaintiff to so do.

A franchise is a special privilege, which does not belong by common right to the citizens of the community at large, but which is bestowed by the proper authority upon some individual or corporation. (*Bank of Augusta* v. *Earle,* 13 Pet. 519; *Curtis* v. *Leavitt,* 15 N. Y. 9, 170; *Smith* v. *Mayor,* 68 id. 552; *Matter of Rhinehart* v. *Redfield,* 93 App. Div. 410; affd., 179 N. Y. 569.)

The words " franchise," " privilege " and " consent " are often used synonymously. I think that in this instance it may well be said that the ordinance of May 25, 1925, granted to the plaintiff a "franchise," as the word is commonly used, for the purposes mentioned. True, section 26 of the Transportation Corporations Law (added by Laws of 1915, chap. 667, as amd. by Laws of 1919, chap. 307) uses the word " consent," and not " franchise," but so does section 171 of the Railroad Law where it prescribes what permission a street surface railroad must obtain before it is privileged to build, extend or operate. The consent of the local authorities given a railroad to build in a street is constantly referred to as a " franchise," although the statute uses the word " consent."

But whether the privilege conferred on the plaintiff by the resolution of May 25, 1925, be called a franchise or a consent matters not, because by whatever name it may be called, it became a contract between the plaintiff and the city, and conveyed to the recipient a vested property right from the moment it was accepted and acted upon in conformity with the grant, and cannot thereafter be lawfully withdrawn or impaired without due process of law.

In several of the cases above cited the proper local authorities granted a consent very similar to the one here under consideration, and which carried with it no right to put any physical structure in a street or public property, but which the court held ripened, upon acceptance, into a contract between the municipality and the grantee, and which could not be recalled.

In *City of Buffalo* v. *Chadeayne (supra)* the common council passed a resolution granting permission to the defendant to erect seven frame houses upon certain specified property within the fire limits, which could not have been built without such permission. Upon the approval of the resolution by the mayor, the defendant made a contract for the material with which he intended to build the structures, and dug the cellars and laid a portion of the cellar walls. While this work was in progress the council adopted an ordinance rescinding its former consent, and this ordinance was approved by the mayor. It was held that the defendant had acquired a vested property right which could not be taken away from him without compensation.

In *People ex rel. Evens* v. *Kleinert (supra)* the superintendent of the bureau of buildings of Brooklyn issued a permit to the petitioner to build an apartment house. After the owner had caused plans to be drawn and a portion of the necessary excavation to be made and was ready to proceed with the work, the superintendent of buildings, without notice, revoked the building permit. Held, that such revocation was futile and worthless, because the petitioner had acquired a vested property right in the permit and the privileges it conferred.

In *Lees* v. *Cohoes Motor Car Co., Inc. (supra)* the board of estimate and apportionment of the city of Cohoes granted permission to the defendant motor car company to erect and maintain a gasoline storage tank, and on the strength thereof the company expended certain moneys. Held, that such consent constituted a right which could not be taken away from the company without due process of law.

In *Matter of Walker (supra)* a building in the city of Buffalo had been converted into a moving picture theatre in 1909, and had been operated as such until June, 1911, when it was closed. In 1913 the relator leased it, with the intention of reopening it for moving picture exhibitions. The mayor, however, refused to issue a license upon the ground that in his opinion there was danger of fire from such use. Certain alterations had been made in the building, none of which increased but all of which diminished the dangers incident to the conduct of such a theatre. A mandamus was issued compelling the mayor to issue a license, upon the theory that the

53

city having once given its permission that the building could be made into a moving picture theatre, and the owner having incurred expenses in its construction, the city's power over such building extended only to regulating and not to prohibiting its use for such purpose.

In *Huntington Traction Co., Inc.,* v. *Walker* (*supra*) it was held that the attempted rescission by the town board of the town of Huntington of a previous resolution making the provisions of section 26 of the Transportation Corporations Law (added by Laws of 1915, chap. 667, as amd. by Laws of 1919, chap. 307) applicable to the town was void, as property rights had vested thereunder.

In *Rochester & Charlotte Turnpike Road Co.* v. *Joel* (*supra*) the plaintiff was given authority by statute to charge certain fixed sums for the use of its road, which varied according to the character of the vehicle or animal passing the tollgate. Some years later the Legislature passed an act striking from the former statute the provision permitting the plaintiff to charge a toll for a bicycle, and re-enacting the rates originally fixed for all other vehicles. It was held that the original statute constituted a franchise which vested in the plaintiff certain property rights, of which it could not be deprived by later legislation.

The defendants insist that, even if the resolution of May twenty-fifth is a grant or offer of a grant, which, if accepted and acted upon, would constitute a contract, and vest property rights in the plaintiff, the moving papers are insufficient to show an acceptance.

It is true that no formal acceptance of the grant was ever executed by the company, or filed in the city clerk's office. That formality, although sometimes followed, is not necessary, unless the franchise itself required it. Neither can it be said that operation must be had under a franchise or grant to constitute acceptance, as urged by the defendants. If that were so no railroad or transportation company would be protected in the expenditure of money in preliminary work made necessary by the statute before operation could be had, or in the actual construction of its line. A railroad or a bus line invariably runs through many municipalities, the consent of which must be obtained before the company can run its cars or buses. Large sums must be expended before operation can actually take place. It takes months, if not years, to build a railroad. Any company would be at the mercy of every municipality through which its route passes if the local authorities of any town, village or city could arbitrarily recall its consent at any time before actual operation, and no corporation would be foolhardy enough to expend its money to obtain the necessary consents to operate, or to build its road and equip its line, if that could be done.

Without doubt the common council, had it deemed it for the best interests of the city, could have required a formal acceptance of the privilege granted, or could have provided just what would have been necessary to have been done by the grantee to constitute an acceptance of the consent. The resolution of May twenty-fifth granted an absolute privilege to the plaintiff to operate its buses over the designated route, reserving no rights of revocation.

The moving papers show that the plaintiff did rely and act upon the consent here under consideration. The company could not lawfully have operated a single bus over the streets of Oswego until it had first obtained from the Public Service Commission of this State a certificate of public convenience and necessity, and it could not receive such certificate until it had first obtained the consent of the common council of Oswego to operate over the streets which would constitute its route to Watertown. The consent was given upon condition that the recipient should within thirty days after it was approved by the mayor apply to the Public Service Commission for such certificate. It did so, and necessarily was compelled to hire attorneys to represent it on such application. Various hearings were had before that body. A decision, however, had not been reached when the rescinding resolution of January eleventh was passed. Just how large a financial obligation the plaintiff assumed in connection with such application does not appear, but that it was a fairly substantial sum is evident from the moving papers.

It also appears that the company has incurred further obligations in the purchase of a motor bus and a bus route now in operation between Oswego and Maple View, and which would have been a competitor of the plaintiff over a part of the route from Oswego to Watertown. All this is indicative of an acceptance of the grant in question by the plaintiff. The privilege granted, therefore, was not inchoate and defeasible, but became a property right of which the plaintiff cannot be deprived at the mere whim of the city.

The defendant further urges that, if the resolution of May twenty-fifth be deemed a franchise, it is void because the requirements of the General City Law were not complied with.

Subdivision 2 of section 23 of the General City Law (added by Laws of 1913, chap. 247) provides as follows: " No sale or lease of city real estate or of any franchise belonging to or under the control of the city shall be made or authorized except by vote of three-fourths of all the members of the common council or corresponding legislative body of the city. In case of a proposed sale or lease of real estate or of a franchise, the ordinance must provide for a disposition of the same at public auction to the highest bidder, under proper regulations as to the giving of security and after public notice to be pub-

lished at least once each week for three weeks in the official paper or papers. A sale or lease of real estate or a franchise shall not be valid or take effect unless made as aforesaid and subsequently approved by a resolution of the board of estimate and apportionment in any city having such a board, and also approved by the mayor."

The consent of May twenty-fifth was not passed by a vote of three-fourths of all the members of the common council, neither was it sold at public auction.

It will be noted that this section uses the word " franchise." If the " consent " of May twenty-fifth was not " franchise " then concededly this provision has no application. I have already discussed that question, and again I say that I do not deem it necessary to draw any fine distinction between the two expressions.

Assuming, but not holding, that the city is not estopped from questioning the validity of its consent of May 25, 1925, I hold that the provisions of the General City Law above quoted do not apply here, and consequently do not render the permission given by the resolution of May twenty-fifth void.

Subdivision 10 of section 20 of the General City Law (added by Laws of 1913, chap. 247) empowers every city in the State, subject to the Constitution and statutes, to grant franchises or rights to use the streets of the municipality. Subdivision 23 of the same section gives to a city the right to exercise all powers necessary and proper for carrying into execution the various powers granted by the previous subdivisions.

A broad, unlimited right to grant a franchise is given the city, and no restrictions are imposed as to how or when the privilege should be conferred.

Nowhere does section 23 of the statute provide that a franchise granted by a city to use its streets must be authorized by a vote of three-fourths of all the members of the common council, or be disposed of at public auction to the highest bidder. The act simply provides that, in case a sale is ordered, such sale can only be made or authorized by three-fourths of all the members of the common council, and must be disposed of at public auction to the highest bidder. Here there was no sale of any franchise.

The extensive and unrestricted powers granted a city in section 20 will not be curtailed by implication, and unless section 23 can fairly be said to restrict such general authority, the provisions of the latter section will be held within the limits therein imposed.

Section 23 is complex and obscure. A careful analysis, however, discloses the fact that the provision regulating the sale of a franchise applies only where the existing provisions of law are superseded by some special or local act which operates in terms or in effect to

prevent or limit the extent of any power granted by article 2-A of the General City Law (added by Laws of 1913, chap. 247). Subdivision 1 of section 23 expressly provides that no provision of any special or local law shall operate to defeat or limit in extent the grant of powers contained in the act, and that, if any provision of a special or local law in terms or effect prevents the exercise or limits the extent of any power granted by the General City Law, such special or local law shall be superseded by the General City Law, and when so displaced and set aside the power given by the General City Law, freed from the limitations imposed by the special statute or ordinance, shall be exercised subject to the limitations provided for in subdivision 2 of section 23. It is apparent, therefore, that the provision relating to a sale at public auction does not require that procedure to be followed in all cases, but applies only where a special statute or an ordinance of the city has been passed which operates in words or in reality to defeat or curtail in extent the power given to the city by section 20 of the General City Law (added by Laws of 1913, chap. 247) to grant franchises or rights to use its streets. Such is not the case here. The Transportation Corporations Law is a general statute, and not a special one, and does not operate to defeat or limit the grant of powers given the city of Oswego by the General City Law.

The authority conferred upon cities by article 2-A of the General City Law, of which the sections above quoted are a part, does not limit or restrict the municipality in the exercise of any power given it by any other statute, but rather adds thereto. Section 22 of that act provides as follows: " The powers granted by this article shall be in addition to and not in substitution for, all the powers, rights, privileges and functions existing in any city pursuant to any other provision of law."

It was not necessary, therefore, that this consent should have been passed by three-fourths of all the members of the common council of Oswego, or that it should have been sold at public auction to the highest bidder. It was a valid ordinance when granted and remains so.

All of the arguments of the defendants as to the validity and effectiveness of the rescinding resolution have been by me fully and attentively considered, and I am forced to the conclusion that the attempted rescission of the grant of May 25, 1925, was void and ineffective, and that the consent given the plaintiff on that date is still efficacious.

The principles underlying this decision are so plain and have been so well and long established that an opinion of this length would be out of place were it not for the fact that the defendants

have argued so persistently and asserted so positively the right of the council to pass the resolution of January eleventh, and were it not for the further fact that various other cities have of late attempted to rescind consents previously given to motor coach corporations pursuant to section 26 of the Transportation Corporations Law (added by Laws of 1915, chap. 667, as amd. by Laws of 1919, chap. 307), under the apparent belief that they had a legal right so to do. For these reasons I have deemed it proper to state at length my reasons for this decision, and define the rights of the city and the recipient of a consent granted to a bus corporation under section 26 of the Transportation Corporations Law, which will furnish a guide in the future, unless this decision shall be reversed, to other municipalities attempting similar action.

The temporary injunction which was granted was too sweeping in its terms. Plaintiff cannot lawfully operate its Oswego-Watertown line without a certificate of public convenience and necessity, which it does not now possess. If it should attempt so to do the court would have no right to restrain the city or its officials from interfering with such operation, and to that extent the injunction already granted went too far. I think, however, that the plaintiff is entitled to a temporary injunction restraining the mayor from signing the resolution of January 11, 1926, and the defendants from doing any act which it would be prevented from doing by reason of the privileges granted to the plaintiff in the resolution of May 25, 1925.