Mr. Justice Story
 

 delivered the opinion of the Court, and, after stating the facts, proceeded as follows:
 

 Upon these facts, the Circuit Court directed the jury that the plaintiffs were not entitled to recover; and the propriety of this direction is the question before us upon this writ of error.
 

 Two points have been argued at the bar: 1. That there was no actual restraint of persons acting under the authority of Spain, whereby the voyage was defeated.
 
 2.
 
 That if a technical total loss took place, by the loss of the voyage, it was a loss occasioned by engaging in an illicit and prohibited trade, for which, by the memorandum in the policy, the underwriters are not liable.
 

 The declaration and the abandonment, both tie up the case to a total loss of the voyage, by the restraint of Spanish authorities. If this case be not made out in proof, there is ap end of the controversy.
 

 
 *185
 
 In a claim for a technical total loss, the loss of the voyage must be occasioned by the immediate operation of a peril insured against. .
 

 If a peril begins to act upon the subject, yet if it be removed before any loss takes place, and the voyage is not thereby broken up, but is or may be resumed, the insured cannot abandon for a total loss.
 

 In cases of this sort, where a technical total loss is asserted as a ground of recovery, it is not sufficient that the voyage has. been entirely frustrated and lost; but the loss must be occasioned by some peril actually insured against. The peril must act directly, and not circuitously, upon the subject of the insurance. It must be an immediate peril, and the loss the proper consequence of it; and it is not sufficient that the voyage be abandoned, for fear of the operation of the peril.
 

 The plaintiffs rely upon the fact, of the Ellen Tooker’s being chased away from St. Ander, and being prevented for several days from returning to that place by the presence of Spanish armed ships, as decisive proof of actual restraint. But the voyage was delayed only, and not broken up by this occurrence, for the vessel afterwards returned in safety to St. Ander. The insurers do not undertake that the voyage shall be performed without delay, or that the perils insured against shall not occur; they undertake only for losses sustained by those perils; and if any peril does act upon the subject, yet if it be removed before any loss takes place, and the voyage be not thereby' broken up, but is, or may be resumed, the insured cannot abandon for a total loss. If a vessel be captured during a voyage, and after-wards be recaptured, and performs, or may perform it, there can be no abandonment after the recapture, for a technical total loss. In the present case, the vessel actually did resume her voyage after the restraint ceased; and there is no evidence to show that any object of the voyage was defeated by this tem-
 
 *186
 
 pcrary restraint and delay to avoid capture. Then, what was the real cause of the final destruction of the voyage? It was, that St. Ander, which but for a short time was in the possession of the troops of General .Mina, was, in transitu, again occupied by the royalists, and the colonial. Government resumed its functions, A trade was inhibited with that place, by the colonial laws of Spain;. and the voyage itself; in which the Ellen Tooker was gaged, placed her, . and her cargo also, in thern racter of an enemy.. It was, clear, `therefore, that a proceeding into St. Ander, would have subjeCted the Ellen Tooker to confiscation for.a double cause; for breach of the ordinary laws of `trade, and for a violation of neutral The voyage then was broken up from fear of loss, by reason of the seizure and confiscation of the property. It was abandoned. by the master quia timebat, and not because there was any actual direct restraint, which `prevented the vessel from proceeding to the port of destination.' The case, therefore, falls directly within the authority of the cases of Hadkinson v. Robinson, 3 Bos. amd Pull. 388. and Lubbock v. Rowcroft, 5 Esp. R. 50. which have never been shaken. In the former case Lord Alvanley said "any loss which necessariJy arises from capture or detention' of princes is a loss within the policy; but here the Captain learning that if be entered the port of destination the vessel would be liable to confiscation avoided `that. port whereby.the object of the voyage is defeated. This does not operate to the `total destruction of the thing insured." There are precisely thi'same circum
 
 *187
 
 stances in the case now at bar. The underwriter does not warrant that the vessel shall have a right to trade at the port of destination; but only that notwithstanding the perils insured against, the vessel shall proceed to such port. If the plaintiffs, in the events which have occurred, were entitled to abandon and recover, as for a technical total loss, they would have been entitled to abandon for the same cause at the time of the vessel’s sailing from New-York on the voyage ; for St. Ander was at that time just as much shut against the vessel, and she was just as liable,to Confiscation for illegal traffic with that place, as she was at the time the voyage was broken up.
 

 
 *186
 
 The cases of Hadkinson v. Robinso, 3 Bos. and Pull. 388. and Lubbock v. Rowcroft, 5 Esp. N.P.R.50 are good law.
 

 
 *187
 
 It is the unanimous opinion of the Court, that the judgment of the Circuit Court be affirmed, with costs.
 

 1
 
 Johns. Rep.
 
 268. Per Kent, Ch. j. who cites 1.
 
 Emerig. Des Assur.
 
 242.