ROBITZEK INVESTING CO., INC., Respondent, *v.* COLONIAL BEACON OIL COMPANY, Appellant.

First Department, April 9, 1943.

*James F. Dwyer* of counsel (*Lloyd F. Thanhouser* with him on the brief; *Satterlee & Warfield,* attorneys), for appellant.

*Harry H. Chambers* of counsel (*Harry B. Chambers* with him on the brief), for respondent.

COHN, J. The action is to recover the sum of $300 representing one month's rent due on May 10, 1942, under a long term written lease between plaintiff and defendant covering real property located on Eastern Boulevard, Bronx County, New York City.

The demised premises consist of a gasoline filling station which was erected by plaintiff from plans and specifications approved by defendant. The filling station was completed in May, 1939. The rental agreed upon is a sum equal to one and one-half cents for each gallon of gasoline and other motor fuels sold at the station, with a minimum monthly rental of $300. In addition, lessee covenanted to pay water rents and taxes levied against the improvements, and taxes upon the land in excess of $125.

When the lease was executed, a loan agreement dated February 3, 1939, was entered into, whereby defendant loaned to plaintiff the sum of $15,000 to enable the latter to erect the improvements. Contemporaneously a bond and mortgage were made and delivered by plaintiff to defendant in the amount of $15,000, payable in 180 monthly installments of $116.67 each, with interest.

Defendant occupied the premises as a gasoline station and paid the rent reserved in the lease from May, 1939, until March 26, 1942. On that date defendant purported to cancel the lease by letter claiming restriction of the use of the premises by reason of an order of the War Production Board and further claiming that the use of the premises was illegal under the Zoning Resolution of the City of New York.

In its amended answer defendant admitted the making of the lease, the nonpayment of the amount demanded, but denied that any rent was due, and, in addition, set up five separate defenses allegedly justifying cancellation of the lease. From an order granting plaintiff's motion for summary judgment and directing that judgment be entered in favor of plaintiff in the sum of $300, being rent for the month of April, 1942, and denying defendant's motion for summary judgment and the judgment entered thereon, this appeal has been taken.

The first and second defenses are based upon paragraph " 7 " of the lease, which reads: " 7. It is understood and agreed that if for reason of any law, ordinance, injunction or regulation of properly constituted authority, Lessee is prevented from using all or any part of the property herein leased as a service station for the storage, handling, advertising or sale of gasoline or other petroleum products or for the conduct of any of the business usually conducted in connection with gasoline service stations, or if the use of the premises herein demised shall be in any manner restricted for any of the purposes above stated * * * the Lessee may, at its option, surrender and cancel this lease, remove its improvements and equipment from said property and be relieved from the payment of rent or any other obligation as of the date of such surrender." In the first defense it is alleged that " Limitation Order L-70 of the United States War Production Board * * * prevents and restricts * * * the use of the premises demised in said agreement of lease for the purposes therein stated and contemplated." So far as material that order, promulgated March 14, 1942, reads as follows: " (1) Service Station Hours of Distribution.

" No Service Station within the Curtailment Area shall deliver to any Persons any Motor Fuel during more than 12 hours of any calendar day or during more than 72 hours of any calendar week."

In the second defense a similar contention is made with respect to Supplementary Order No. M-15-c of the United States Office of Production Management. That order became effective on December 27, 1941, and reads: " No person shall sell, lease, trade, lend, deliver, ship or transfer new rubber tires, casings, or tubes, and no person shall accept any such sale, lease, trade, loan, delivery, shipment or transfer of any such new rubber tires, casings, or tubes."

Defendant contends that by reason of the quoted Federal regulations, use of the demised premises as a gasoline station was prevented and restricted and that it was therefore entitled to cancel the lease in accordance with its express terms.

We are unable to agree with this view. The clause of the lease relied upon by defendant contemplates a cancellation only (1) if the lessee is prevented from using the property for a gasoline service station and the business ordinarily connected therewith or (2) if the premises have been restricted against such use. The language employed shows that the clause has reference to a law or order regulating not

the defendant's business, but the use of the premises as such; it refers to a real property restriction. The governmental orders do not regulate the use of the premises but merely control transactions in gasoline, tires, casings and tubes without regard to any particular parcel of property. If it were the intention of the parties to do so, they could readily have provided for cancellation of the lease in the event of a regulation of defendant's business by employing language to that effect. Were we to accept defendant's interpretation of the agreement, any rule, order or regulation of public authority even of temporary duration which might affect defendant's business and restrict its profits would allow defendant to cancel the lease. That clearly was not the expressed intention of the parties. The Federal regulations do not restrict the use of the land demised, but they control the business of the defendant. A business enterprise of the type involved is subject to regulation by public agencies, but here that risk must be borne by defendant and not by plaintiff.

Where there is complete frustration of performance of a contract by act of the government, cancellation is permissible. (*Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467, 472.) Here there is not complete frustration. Defendant could have continued to operate the gasoline station at the demised premises within the terms of the lease though the volume of its business might have suffered substantial diminution because of the Federal regulatory measures. (See *Byrnes* v. *Balcom*, 265 App. Div. 268, 271, affd. 290 N. Y. 730; *Colonial Operating Corp.* v. *Hannan Sales & Service*, 265 App. Div. 411.) However, defendant does not claim that performance of the contract has been rendered impossible by governmental authority. It relies exclusively upon the cancellation clause in paragraph " 7 " of the lease. Upon the admitted facts defendant had no right to cancel under that paragraph of the agreement.

In its third defense, defendant relies upon paragraph " 7 " and then proceeds to allege that the Zoning Resolution of the City of New York prevented, restricted and rendered unlawful the use of the premises for the purposes stated in the lease. Defendant's possession for a period of almost three years has never been questioned by any agency or department of the municipality. A certificate of occupancy covering the premises was issued May 25, 1939, by the Department of Housing and Buildings, Borough of Bronx. It specifically covers: " Gasoline Service Station Auto Repair Shop, Storage and Parking of more than five (5) motor vehicles."

The New York City Charter, section 646, subd. g, provides as follows: "Every certificate of occupancy shall, unless and until set aside or vacated by the board of standards and appeals or a court of competent jurisdiction, be and remain binding and conclusive upon all agencies and officers of the city, and shall be binding and conclusive upon the department of labor of the state of New York, as to all matters therein set forth, and no order, direction or requirement at variance therewith shall be made or issued by any agency or officer of the city, nor by the department of labor of the state of New York, or any commission, board, officer or member thereof." The law is thus declared that a certificate of occupancy is binding and conclusive upon all agencies of the city until set aside by the Board of Standards and Appeals or by the courts. (*Drennan* v. *Smith Valley Realty Corp.*, 211 App. Div. 796; *Matter of Edwards* v. *Murdock*, 283 N. Y. 529; *Central Park Plaza Corp.* v. *Monsky*, 145 Misc. 688.)

So long as the certificate of occupancy is in full force and effect, it may not be collaterally attacked. Defendant has not been prevented from using the property for the purposes specified in the certificate nor is there any showing that the use of the demised premises has been restricted or rendered unlawful by the Zoning Resolution of the City of New York. No attempt has ever been made to set aside the certificate of occupancy and for almost three years defendant has been in peaceful enjoyment of the premises.

As defendant fails to show that it has been or is being precluded from using the property for the purposes set forth in the lease or that any such purposes are in any way restricted, the third defense is without substance.

Defendant's fourth defense is that plaintiff by the terms of the lease represented that all necessary permits and licenses had been obtained and were valid and binding, but that those representations were untrue and that defendant rescinded the agreement and duly tendered back possession of the premises to plaintiff. The proof submitted by defendant does not sustain this defense. The certificate of occupancy issued to plaintiff by the Department of Housing and Buildings, Borough of Bronx, dated May 25, 1939, certifies, as required by statute (New York City Charter [1938], § 646, subd. d), that the premises conform " to the requirements of the building code and all other laws and ordinances, and of the rules and regulations of the Board of Standards and Appeals, applicable to a building of its class

and kind at the time the permit was issued '' and that the '' provisions of section 646F of the New York Charter have been complied with.'' ,Section 646, subd. f, of the New York City Charter provides that no certificate of occupancy shall be issued for any building where containers for inflammables are stored until the fire commissioner has tested and inspected and certified his approval in writing on the installation of such containers. This approval is recorded on the certificate of occupancy. If any of the permits or licenses required were illegal or invalid, such certificate would not issue.

There is no record of any violation against the premises nor is there any proof that any attempt has ever been made by any public official, board, agency, or by any individual to set aside before the Board of Standards and Appeals or in a court of law, the binding and conclusive effect of the certificate of occupancy. During the years between the time that defendant entered upon the premises pursuant to the terms of the lease and up to the time of the purported cancellation, its occupancy has been unchallenged. Up to the day that defendant decided to cancel there was not from any source the slightest suggestion of invalidity or illegality of any certificate, license or permit.

The only permits claimed to be missing are (1) a certificate of variance and (2) the certificate for the erection and maintenance of an electric sign. The former is unnecessary because plaintiff has the certificate of occupancy permitting the use of the premises for the purposes contemplated under the lease. As to the latter, no agreement was made by plaintiff to erect an electric sign.

Though the premises are now located in a restricted use district, they were in an unrestricted use district at the time original plans for a gasoline service station were filed. Before the effective date of the change re-zoning the district into a business district, plaintiff had begun work under the plans as originally filed. The permit thus acquired gave it the right to use the premises as a gasoline station. (*City of Buffalo* v. *Chadeayne,* 134 N. Y. 163.)

Relying upon permits which defendant now challenges, plaintiff in 1939 expended large sums of money to build a structure which was designed to meet defendant's requirements. When plaintiff in good faith entered upon the construction of the building and gasoline station leased to defendant, and incurred liabilities on the basis of amended plans and specifications permitted and approved by the Department of Housing and Buildings, it acquired a vested right therein of which it could

not thereafter be deprived. (*City of Buffalo* v. *Chadeayne, supra; City of New York* v. *Caulwal Construction Co., Inc.,* 235 **App. Div.** 682, affd. 261 N. Y. 578; *People ex rel. Evens* v. *Kleinert,* 201 App. Div. 751.) Defendant's claim that any of the necessary certificates, licenses or permits are illegal and invalid finds no substantiation in the record.

The fifth defense is merely a reiteration of the matters alleged in the third and fourth defenses, save that defendant relies upon the general purpose and intent of the lease. For reasons hereinbefore set forth this defense is likewise unsupported by proof.

As there is no triable issue of fact presented by the record the Special Term properly granted summary judgment in favor of plaintiff.

The order granting plaintiff's motion for summary judgment and denying defendant's cross-motion for summary judgment and the judgment entered thereon should be affirmed, with costs.

MARTIN, P. J., UNTERMYER, DORE and CALLAHAN, JJ., concur.

Judgment and order unanimously affirmed, with costs.