STATE MUTUAL LIFE ASSURANCE COMPANY, Appellant, *v.* H. J. GRUBER et al., Individually and as Copartners under the Name of THE POLARIZING INSTRUMENT COMPANY, Respondents.

First Department, May 4, 1945.

*George S. Collins* of counsel (*Cravath, Swaine & Moore,* attorneys), for appellant.

*Sidney S. Allen* of counsel (*Robert P. Lord,* attorney), for respondents.

UNTERMYER, J. The action is to recover unpaid rent under a written lease, by which the plaintiff leased to the defendants a factory building located in Cleveland, Ohio, " to be used and occupied for light manufacturing ". The lease is for a period of two years, commencing September 1, 1942. The rent, at the rate of $10,000 per year, is payable in monthly installments of $833.33. Because the defendants did not receive possession of the premises for ten days following the beginning of the term the amount of rent due for the month of September, 1942, was $555.55, which was duly paid. Rent for the month of October, 1942, was paid in the full amount. No further payments were made.

The complaint demands judgment for $11,944.40, but the plaintiff now concedes that, after crediting the sum of $5,000 deposited as security for the performance of the lease and allowing to the defendants a credit for the ten-day period during which they did not receive possession of the premises, only the sum of $6,666.62 with interest is due.

Thus the single question now controverted concerns the liability of the defendants for rent or damages for breach of the lease for the period from November 1, 1942, to August 31, 1944, the premises having been vacated by the defendants at the end of October, 1942. The facts relied on by the defendants are set forth in the answer as an affirmative defense and counterclaim, and are further amplified in the affidavits submitted in opposition to the plaintiff's motion for summary judgment. It will be expedient, therefore, to consider the motion for summary judgment rather than the plaintiff's motion to strike out the affirmative defense and counterclaim as insufficient in law if it will dispose of the action on the merits and render unnecessary consideration of the less specific allegations of the affirmative defense and counterclaim. In doing so we must assume the statements contained in the defendants' affidavits to be true.

The defendants' affidavits disclose that on July 28, 1942, they received a contract from the United States Government for the manufacture of " Sextants ", a device used in navigation in the prosecution of the war. It was required that the " Sextants " be produced at a factory distant from the eastern coastal area, where the defendants then operated their factory and where otherwise the contract would have been performed.

With the approval of the government the defendants entered into the lease with the plaintiff of their factory building at Cleveland, Ohio, for the sole purpose of fulfilling their contract. It is then stated: " In the course of these negotiations and as a necessary prerequisite to the obtainment of said lease, the plaintiff was fully informed of the nature of the business of defendants and of all the facts above related, to wit, the fact that defendants already had a plant in New York City, the fact that defendants were obtaining a substantial contract from the Army Air Forces for the manufacture of ' Sextants ' but upon the condition that the said contract should not be performed in defendants' plant in New York City for security reasons and that defendants perform such contract at an inland location and that the plant here in question was sought to be leased only for the purpose of performing such particular contract in accordance with such requirement of the Army Air Forces.  *  *  *

" The expectations and contemplations of all parties concerned were that the defendants would be permitted to perform the said contract for the government for the manufacture of said ' Sextants.' "

While engaged in the performance of their contract the defendants on or about October 24, 1942, received a direction from the government through the Army Air Forces to desist from the further production of " Sextants ". It is alleged that on the receipt of these instructions issued under authority of law the lease and the leased premises became entirely useless and worthless to the defendants. The defendants immediately offered to surrender the premises to the plaintiff and, that offer having been declined, they quit the premises and refused to pay further rent.

The defendants rely on the cancelation of their contract by the government to justify the refusal to perform their contract with the plaintiff. We fail to understand why any loss which the defendants may incur should thus be shifted from them and imposed upon a party who was in no contractual relations with the government. It may be true as the defendants assert, that both parties acted in the expectation that the government would not exercise its right to terminate the contract for the performance of which the defendants required a factory in Ohio, but if the defendants desired to protect themselves against that contingency they should have done so by a suitable provision in their lease with the plaintiff. (*Raner* v. *Goldberg*, 244 N. Y. 438.) Not having done so, their position is the same as if

a private customer for whom they had contracted to produce merchandise in the plaintiff's factory had become bankrupt or had exercised a privilege in the contract allowing him to terminate. If there is to be any stability in business transactions the doctrine of frustration cannot be applied to such a case. Whether that doctrine would apply where the exclusive purpose for which the premises are rented is subsequently prohibited by law need not be considered at this time.

The present case is readily distinguishable from instances where the performance of the contract between the parties has been rendered illegal by act of law. (*Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467.) No law has rendered illegal the performance of the lease and the payment of rent, nor has any governmental order, statute or proclamation abrogated that contract. Other classes of cases relied on by the defendants involving the death of a person whose continued life, or the destruction of a chattel whose continued existence, is the foundation of the contract (*Lorillard* v. *Clyde et al.*, 142 N. Y. 456) are inapplicable here for the subject matter of the lease — the occupancy of the premises at a stipulated rental — remains unimpaired. The defendants' inability to use the premises in the performance of a particular contract is one of the risks incident to the transaction of their business against which courts do not afford relief. (*Robitzek Investing Co.* v. *Colonial Beacon Oil Co.*, 265 App. Div. 749; *Byrnes* v. *Balcom*, 265 App. Div. 268; *Colonial Operating Corp.* v. *Hannan Sales & Service*, 265 App. Div. 411.)

The order insofar as it denies plaintiff's motion for summary judgment should be reversed, with $20 costs and disbursements to the appellant, and the motion granted to the extent herein indicated. The appeal from so much of the order as denies plaintiff's motion to strike out the separate defense and counterclaim as insufficient in law should be dismissed.

MARTIN, P. J., TOWNLEY, GLENNON and DORE, JJ., concur.

Order insofar as it denies plaintiff's motion for summary judgment unanimously reversed, with $20 costs and disbursements to the appellant, and the motion granted to the extent indicated in opinion. The appeal from so much of the order as denies plaintiff's motion to strike out the separate defense and counterclaim as insufficient in law is dismissed. Settle order on notice.