## BAKER CASTOR OIL CO. v. INSURANCE CO. OF NORTH AMERICA.

### No. 297, Docket 20221.

Circuit Court of Appeals, Second Circuit.

Aug. 5, 1946.

Writ of Certiorari Denied Jan. 6, 1947.

See 67 S.Ct. 494.

Forrest E. Single, of New York City (David S. Jackson, of Buffalo, N. Y., of counsel), for appellant.

Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar, Martin Detels, and Charles W. Harvey, all of New York City, of counsel), for appellee.

John F. X. McGohey, U. S. Atty., of New York City (Edward L. Smith, Sp. Asst. to the Atty. Gen., and Dudley C. Smith, Insurance Counsel, War Shipping Administration, and Eugene F. Russell, Jr., Sp. Atty., Department of Justice, both of New York City, of counsel), as amicus curiae.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

In 1941, before the United States was at war, Lloyd Brasileiro, a department of the government of Brazil and the owner of three vessels here involved, the Commandante Pessoa, the Jaboatao, and the Lesteloide, applied to the United States Maritime Commission[1] for and received "warrants" for its vessels. A shipowner receiving such warrants obligated itself to adhere to the rules and regulations of the Commission, including the routes and voyages which its vessels should undertake, and in return was entitled, among other benefits, to priority for facilities for loading and discharging cargo and for the procurement of bunker fuel or coal. 50 U.S.C.A.Appendix, § 1283.

Early in 1942, the plaintiff-appellant shipped 44,967 bags of castor beans on the three named vessels, the bills of lading naming New York as the port of discharge but broad liberties were reserved to the carrier

---

[1] These functions of the Commission were later transferred to the War Shipping Administration. Ex.Order 9054, 7 Fed.Reg. 837.

4

to proceed to and terminate the voyage at some other port in order to avoid war perils. This cargo was insured by the plaintiff with the defendant under two open policies, one of marine insurance, the other of war risk insurance which covered only while the cargo was aboard the overseas vessels from the port of loading in Brazil to the port of discharge in the United States. This latter policy, which is the only one sued on, provided:

"I. This insurance is only against the risks of capture, seizure, destruction or damage by men of war, piracy, takings at sea, arrests, restraints and detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes; but excluding claims for delay, deterioration and/or loss of market, and warranted not to abandon [on any ground other than physical damage to ship or cargo] until after condemnation of the property insured. Also warranted not to abandon in case of blockade, and free from any claims for loss or expense in consequence of blockade or of any attempt to evade blockade; but in the event of blockade, to be at liberty to proceed to an open port and there end the voyage."

After the castor beans had been delivered to the carrier and the bills of lading issued therefor, Lloyd Brasileiro, because of recent sinkings of Brazilian ships by German submarines, ordered all its vessels into port pending arrangements for convoys to protect them from the menace of those submarines in the Atlantic. The owner's general agent in the United States then applied to the Wartime Insurance Committee of the War Shipping Administration for hull war risk insurance and was the next day informed by telephone that the applications would be granted if all the vessels would proceed to New Orleans instead of to New York. This condition upon the issuance of

the hull insurance was confirmed by telegram. The agent informed the head office and a director of Lloyd Brasileiro of the condition, and the director then ordered all of his company's ships to proceed to New Orleans. The hull insurance was then issued, one clause stating:

"Special Conditions

"The owner of the vessel irrevocably and unconditionally agrees that in consideration of granting War Risk Insurance by the War Shipping Administration to follow the direction of the Administrator as to the Port or Ports of discharge the nature and quantity of the cargo to be carried and as to freight rates. Any breach of this warranty shall automatically void this insurance from inception."

The named vessels proceeded to New Orleans and discharged the cargoes of castor beans. The plaintiff then shipped the beans by rail to its factory in Bayonne, N. J., at an additional freight charge of $39,249.58. Alleging that this additional cost was a loss proximately caused by the war perils insured against, the plaintiff brought this suit to recover that amount under the cargo war risk policy. The trial court found that the orders of Lloyd Brasileiro directing the conduct of its ships were confined to its own vessels and that they were given as a private owner not a sovereign. It was also found that the conditions upon the issue of warrants and hull insurance were voluntarily accepted by the owners and thus were not sovereign acts of the United States nor compelled by the United States Navy; but no finding was made as to whether or not the loss was caused by sovereign acts of the German government within the terms of the policy. Judgment was entered for the defendant dismissing the complaint and the plaintiff appealed.

The District Court correctly held that there were no acts by either the government of Brazil or that of the United States constituting a sovereign restraint within the terms of this war risk policy. As stated by that court [60 F.Supp. 32, 35]: "Restraint of princes means the operation of the sovereign power by an exercise of vis major, in its sovereign capacity, controlling and divesting for the time, the do-

minion or authority of the owner over the ship. Bradlie v. Maryland Insurance Co., 37 U.S. 378, 12 Pet. 378, 402, 9 L.Ed. 1123, 1134, and in marine and war risk policies restraint of princes applies only to acts done in the exercise of the sovereign power. Northern Pacific Ry. Co. v. American Trading Co., 195 U.S. 439 at page 467, 25 S.Ct. 84, 49 L.Ed. 269; The Claveresk, 2 Cir., 264 F. 276, at page 281." What Lloyd Brasileiro did as a private owner and with regard only to its own ships was not the exercise of any such sovereign power. Nor were the acts of the War Shipping Administration and its branches an exercise of the sovereign power of the United States. Rather, those acts were the exercise of a right voluntarily conferred upon the War Shipping Administration by the owners in order to secure the warrants and hull insurance. The United States did not purport to deny all rights to any owner not obeying its rules, Compagnie Chemin de Fer Paris-Orleans v. Leeston Shipping Co., Ltd., 1919, 36 T.L.R. 68; on the contrary, it offered the positive inducement of certain privileges to those who would voluntarily cooperate with it to protect shipping. See Aktiebolaget M. Bank v. American Merchant Mar. Ins. Co., 241 N.Y. 197, 149 N.E. 830.

The appellant further argues that the diversion of the vessels to New Orleans was occasioned by the threat of the German submarines then active along our Atlantic coast, which was the real peril insured against, and that this threat was the real cause from which the loss was a consequence "naturally flowing from the peril insured against, or incident thereto" and therefore, "attributable to the peril itself." Lanasa Fruit S. S. & I. Co. v. Universal Ins. Co., 302 U.S. 556, 565, 58 S.Ct. 371, 375, 82 L.Ed. 422. Had there been any "impact" of that risk insured against, the necessary consequences would have been covered by the policy. Leyland Shipping Co. v. Norwich Union F. Ins. Soc., [1918] A.C. 350; Lanasa Fruit case, supra. But here there was no such "impact." The loss resulted from the acts of the owner in avoiding that risk. And, although those acts in avoidance may have been such prudent acts as to excuse the shipowner, and although

they may have been motivated by the presence of the war risk insured against, they were not, within the legal concept of cause, the result of that peril, and, therefore, are not the result of "restraints and detainments and other war-like operations and acts of kings, princes and peoples in prosecution of hostilities * * *" The Kronprinzessin Cecilie, 244 U.S. 12, 37 S.Ct. 490, 61 L.Ed. 960; The Styria v. Morgan, 186 U.S. 1, 22 S.Ct. 731, 46 L.Ed. 1027; Smith v. Universal Ins. Co., 6 Wheat. 176, 5 L.Ed. 235; cf. Queen Ins. Co. of America v. Globe & Rutgers F. Ins. Co., 263 U.S. 487, 44 S.Ct. 175, 68 L.Ed. 402; Nickels & Co. v. London & P. Mar. & Gen. Ins. Co., Ltd., 6 C.C. 15.

Affirmed.