## 119 FIFTH AVENUE, INC., Plaintiff, *v.* TAIYO TRADING Co., INC., Defendant.

Supreme Court, Special Term, New York County, June 24, 1947.

*Alexander Bicks* and *George Frankenthaler* for plaintiff.

*Edward V. Loughlin* for defendant.

BENVENGA, J. This is a motion for summary judgment in an action for accrued rental.

In September, 1940, plaintiff, as landlord, leased certain premises to defendant for a period of three years beginning February, 1941, and ending January, 1944. The lease provided, among other things, that defendant " shall use and occupy the demised premises for the sale, assembly, storage and shipping of Japanese goods, Chinese goods, Oriental goods, and/or other kindred merchandise, and for no other purpose."

In December, 1941 (following the Japanese attack on Pearl Harbor and the beginning of hostilities between this country and Japan), the Alien Property Custodian, acting under governmental authority, padlocked the leased premises and took possession of its contents. Though a domestic corporation, defendant was a foreign national, since a majority of its stock was owned by nationals of an enemy country.

In March, 1942, defendant vacated the premises. Since that time and until the expiration of the lease they have remained vacant and defendant has failed to pay the accrued rent.

The defense of frustration or impossibility of performance has been interposed. The answer alleges that, without any fault or wrongdoing on its part, defendant was prevented and prohibited from carrying on its business by reason of the action taken by the Federal Government, and that as a result the purpose of the lease was frustrated and performance rendered impossible.

The doctrine of frustration is of comparatively recent growth (Rogers, Effect of War on Contracts [1940 ed.], p. 48). The general principle underlying it is that, where the purpose of a contract is completely frustrated and rendered impossible of performance by a supervening event or circumstance which was not within the contemplation of the parties and which could not have been anticipated and guarded against, the contract is discharged. But where the purpose of the contract is not completely frustrated and performance is not rendered impossible, or where the supervening event or circumstance was within the contemplation of the parties and might have been anticipated and guarded against, the contract is not discharged (*Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467, 472; *Robitzek Investing Co.* v. *Colonial Beacon Oil Co.*, 265 App. Div. 749, 753, motion for leave to appeal denied 291 N. Y. 831; *Raner* v.

*Goldberg,* 244 N. Y. 438, 441–442; *Canadian I. A. Co.* v. *Dunbar M. Co.,* 258 N. Y. 194, 198–199; *State Mut. Life Assur. Co.* v. *Gruber,* 269 App. Div. 170, 172–173; *Farlou Realty Corp.* v. *Woodsam Associates,* 49 N. Y. S. 2d 367, affd. 268 App. Div. 975, affd. 294 N. Y. 846; 6 Williston on Contracts [Rev. ed.], §§ 1938, 1939, 1955; Restatement, Contracts, §§ 288, 458).

The doctrine is based upon the theory of an implied term which the law imputes to the parties in order to regulate a situation which, in the eyes of the law, the parties themselves would have regulated by agreement if the necessity had occurred to them (McNair, Legal Effects of War [1944 ed.], pp. 143, 151; Rogers, Effect of War on Contracts [1940 ed.], pp. 50–51). It applies where, since the formation of the contract, there has supervened an event or circumstance of such a character that reasonable men in the position of the parties would not have made the contract, or would not have made it without inserting some appropriate provision, if they had known or anticipated what was going to happen (McNair, Legal Effects of War [1944 ed.], p. 153).

The essential element in every case involving frustration is impossibility of performance. This impossibility may be of two kinds: (1) Absolute impossibility, that is, where the supervening event or circumstance " absolutely prohibits the performance of the obligation in the contract "; and (2) relative impossibility, that is, " impossibility of such a nature that, although it does not make performance within the terms of the original contract illegal or physically impossible, yet it nevertheless so changes its nature as to make it in fact a different obligation altogether." (Rogers, Effect of War on Contracts, p. 55.) As illustrations of absolute impossibility, the learned author refers to prohibitions of the law as to trading with the enemy; changes in law which make performance illegal; and the complete destruction of the subject matter which is the basis of the contract (Rogers, Effect of War on Contracts [1940 ed.], p. 55). The instant case falls within the first category. It is one of absolute impossibility, occasioned by the exercise of war powers vested in Congress, in the President, and in the Alien Property Custodian, and by virtue of section 6 of the Trading with the Enemy Act (U. S. Code, tit. 50, Appendix, § 6).

The principle of frustration, as now understood, was first applied in the famous " coronation cases ", of which *Krell* v. *Henry* ([1903] 2 K. B. 740), is a typical example. The contract in that case involved the hiring of a flat to witness the corona-

tion procession which failed to take place owing to the illness of the King. The procession not having taken place, the defendant declined to pay the accrued rent. In holding that plaintiff was not entitled to recover, the court said (pp. 751–752): "Each case must be judged by its own circumstances. In each case one must ask oneself, *first,* what, having regard to all the circumstances, was the foundation of the contract? *Secondly,* was the performance of the contract prevented? *Thirdly,* was the event which prevented the performance of the contract of such a character that it cannot reasonably be said to have been in the contemplation of the parties at the date of the contract? If all these questions are answered in the affirmative * * *, I think both parties are discharged from further performance of the contract. * * * The *test* seems to be whether the event which causes the impossibility was or might have been anticipated and guarded against." (Italics supplied.) This test was applied by the Court of Appeals in *Raner* v. *Goldberg* (244 N. Y. 438, 441–442, *supra*), citing *Krell* v. *Henry* (*supra*) with approval.

Applying the test to the instant case, it is clear that not all of these questions can, as a matter of law, be answered in the affirmative. It may, perhaps, be affirmed as a matter of law that the foundation of the contract was the lease of the premises for the sale of Japanese and other Oriental merchandise, and for no other purpose. It seems to me, however, that an issue of fact is presented as to whether the purpose of the lease was completely frustrated and performance rendered impossible by the exercise of governmental authority (see *Canrock Realty Corp.* v. *Vim Electric Co., Inc.,* 179 Misc. 391, 393). For "Even more clearly with respect to leases than in regard to ordinary contracts, the applicability of the doctrine of frustration depends on the total or nearly total destruction of the purpose for which, in the contemplation of both parties, the transaction was entered into." (6 Williston on Contracts [Rev. ed.], § 1955, pp. 5486–5487; *Lloyd* v. *Murphy,* 25 Cal. 2d 48; *Brown* v. *Oshiro,* 68 Cal. App. 2d 393.) Another issue of fact is presented as to whether the supervening event or circumstance was within the contemplation of the parties at the time of the execution of the lease and might have been anticipated and guarded against (*Chase Nat. Bank* v. *Onishi,* N. Y. L. J., Feb. 19, 1943, p. 689, col. 2; *Jefferson Estates* v. *Wilson,* 39 N. Y. S. 2d 502); this issue being raised by the circumstance that, at the time of the making of the lease, this country was in a state of limited national emergency. Indeed, Executive Order No. 8389 (Code

of Fed. Reg., Cum. Supp., tit. 3, p. 645), upon which defendant relies, had then been in effect almost six months.

True, as plaintiff argues, there are cases which refuse to apply the doctrine of frustration to leases, on the ground that an estate is conveyed to the lessee which carries with it all risks (see *London and Northern Estates* v. *Schlesinger* [1916], 1 K. B. 20; *Whitehall Court, Limited,* v. *Ettlinger* [1920], 1 K. B. 680; *Swift* v. *MacBean* [1942], 1 K. B. 375). Such cases distinguish between a license to occupy premises for a temporary purpose (as in the coronation cases), and a lease or demise of premises for a period of time. But this line of distinction, as has been pointed out, " is not always easy to draw." (MacNair, Legal Effects of War [1944 ed.], p. 281.) Be that as it may, the modern cases apply the doctrine to all contracts including leases, especially where, as has been stated, there has been a total or nearly total destruction of the purpose for which, in the contemplation of the parties, the lease was executed (6 Williston on Contracts [Rev. ed.], § 1955; *Lloyd* v. *Murphy, supra; Brown* v. *Oshiro, supra*). Similarly, the courts of this State have repeatedly applied the doctrine to leases. They have assumed the applicability of the doctrine, although the question does not seem to have been raised (see *Raner* v. *Goldberg,* 244 N. Y. 438, 440–442, *supra; Robitzek Investing Co.* v. *Colonial Beacon Oil Co.,* 265 App. Div. 749, motion for leave to appeal denied 291 N. Y. 831, *supra; Farlou Realty Corp.* v. *Woodsam Associates,* 49 N. Y. S. 2d 367, affd. 268 App. Div. 975, affd. 294 N. Y. 864, *supra; First Nat. Bk. of New Rochelle* v. *Fairchester Oil Co.,* 267 App. Div. 281; *Byrnes* v. *Balcom,* 265 App. Div. 268, 271, affd. 290 N. Y. 730; *Colonial Operating Corp.* v. *Hannan Sales & Service,* 265 App. Div. 411; *Schantz* v. *American Auto Supply Co., Inc.,* 178 Misc. 909; *Canrock Realty Corp.* v. *Vim Electric Co., Inc.,* 179 Misc. 391, *supra; Kollsman* v. *Detzel,* 184 Misc. 1048).

For these reasons, the motion and cross motion for summary judgment are denied.