## L. N. JACKSON & CO., Inc. v. LORENTZEN et al.

United States District Court
S. D. New York.

Feb. 9, 1949.

---

Copal Mintz, of New York City, for plaintiff.

Haight, Griffin, Dening & Gardner, of New York City (Barns & Cook, Paul L. Murphy and Wharton Poor, all of New York City, of counsel), for defendants.

GODDARD, District Judge.

This suit for damages for breach of contract for the carriage of goods was tried to the court without a jury.

The defendant, The Royal Norwegian Government, owned, operated, controlled and managed through its agency, the Norwegian Shipping and Trade Mission, of which Oivind Lorentzen was director, the steamship Tropic Star of Norwegian registry. It in turn engaged the Seas Shipping Company, Inc. as berth agent to book cargo for the Tropic Star for carriage from Beira, East Africa to the United States.

On October 4, 1941 the defendant voluntarily filed an undertaking under the Ship Warrants Act, 50 U.S.C.A.Appendix, § 1281 et seq., for all its ships which would or might come to United States ports. The shipowner under the Act obligates itself or himself to comply with rules and regulations of the United States Maritime Commission including the trades in which such vessel shall be employed, the voyages it shall undertake, the class of cargo to be carried, and such incidental and supplementary matters as appear to the Commission to be necessary or expedient for the purposes of the warrant. In return the shipowner obtains certain priorities and facilities for loading and discharging cargo, fuel, repairs, etc.

On November 7, 1941 the plaintiff and the defendant, through its agent, Seas Shipping Company, Inc., entered into an agreement in letter form,[1] for the carriage from Beira to New York of 1,000 tons of copra on board the Tropic Star. At the time this letter was written, the Tropic Star was undergoing repairs at Durban and due to war time conditions the repairs took longer than anticipated and upon being notified of the delays, the plaintiff continued to extend the time for loading at Beira. However, on receipt by the defendant of a telegram[2] of December 22, 1941, and confirmed on January 2, 1942,[3] the defend-

[1] "November 7, 1941
"Messrs. W. J. Byrnes & Company,
    Of New York, Inc.
        RE: SS 'Tropic Star'
25 Broadway,
New York City.
Attention: Mr. W. J. Byrnes.
"Gentlemen:
"We have for acknowledgment your letter November 6th and are pleased to confirm that we have booked 1,000 tons COPRA, in bags, for the SS 'TROPIC STAR', expected to be ready to load at Beira on November 25th, destination New York, rate $22.00 per 2240#, brokerage—1¼%.
"We are cabling to our agents at Beira, asking them to arrange with the Manica Trading Company for delivery of the COPRA to the steamer.
"It is understood that the freight is collect and will be paid by your principals, Messrs. L. N. Jackson & Co., Inc. upon cable advice that the cargo has been loaded.
                Very truly yours
                Seas Shipping Co., Inc.,
                    [Robin Line]
            [Signed]  S. G. Maddock,
                            DS
                Vice-President.
"CC Mr. A. E. King,
Asst. Director,
Emergency Shipping,

Maritime Commission,
Washington, D. C.
Mr. H. J. Tieg.
Norwegian Shipping & Trade Mission,
New York City
Mitchell Cotts & Co., Ltd., London.
Mitchell, Cotts & Co., Ltd., Durban"
SJM*IS

[2] "1941 Dec 22 PM 8 58
"321 Wadt 19 Govt
  RY Washington DC 743P
Seas Shipping Company
  39 Cortlandt Street New York NY
Tropic Star due to requirements for critical strategic commodities please cancel booking 1000 tons copra substitute sisal Wool. Confirm.
    A. E. King U S Maritime Commission
                    CC Mr. Smith
                    Tropic Star"

[3] "1942 Jan 2 PM 8 44
"WB699 20 NT Govt-Washington DC 2
Seas Shipping Co.
  39 Cortlandt St NYK—
YTD Tropic Star Copra. Can only reiterate urgent defense requirements make necessary carriage of essential commodities accordance our previous instructions.
    A. E. King US Maritime Commission
                    Tropic Star
                Mr. F. R. Smith
                Mr. S. J. Maddock"

ant notified plaintiff that pursuant to the orders of the United States Maritime Commission, plaintiff's shipment of copra is cancelled.[4]

The defendant urges two principal defenses:

1. Estoppel by res adjudicata.

2. Frustration by a sovereign power.

The plaintiff originally sued the Seas Shipping Company, Inc. as principal in the New York State Supreme Court, and after trial a judgment was rendered in favor of the Seas Shipping Company, Inc. with an opinion by Mr. Justice Levey, Jackson & Co. v. Seas Shipping Co., 185 Misc. 94, 56 N.Y.S.2d 501. The judgment was affirmed by the Appellate Division, 270 App. Div. 830, 61 N.Y.S.2d 371, and by the Court of Appeals, 296 N.Y. 529, 68 N.E.2d 605, without written opinion in either court.

The opinion in the State Supreme Court indicates that four points were considered by the trial court, namely—

1. That the Seas Shipping Company, Inc., was not in default prior to cancellation.

2. That the Seas Shipping Company, Inc. was justified in complying with the order of the United States Maritime Commission.

3. That "This direct intervention by a Government mandate * * * embodied every element significant and essential for a complete frustration so as to excuse * * * performance on the part of the defendant". [Seas Shipping Company, Inc.]

4. That the defendant Seas Shipping Company, Inc., acted as agent for a disclosed principal and hence was not liable for breach of contract.

Subsequent to this litigation in the State Court the Circuit Court of Appeals for this Circuit in Baker Castor Oil Co. v. Insurance Company of North America, 2 Cir., 157 F.2d 3, affirmed a decision of the District Court holding in substance that the control exercised under the Ship Warrants Act by the War Shipping Administration over vessels of foreign owners was not the exercise of the sovereign power of the United States but was the exercise of rights voluntarily conferred upon the War Shipping Administration by the owners in return for certain privileges. Upon the basis of this decision, plaintiff moved for a re-argument in the New York Court of Appeals and in its brief in opposition the Seas Shipping Company, Inc. took the position that the Baker Oil Company case was factually different, but primarily relied upon the contention that the Baker case did not affect the decision in the State Court since the trial court found that the defendant in that court was an agent of a disclosed principal. The motion for re-argument was denied. The present defendant, who was not a party to the suit in the State Court, now asserts the defense of estoppel by res adjudicata, asserting that all the issues now raised were tried out in the State court in the suit against the agent of the present defendant, Seas Shipping Company, Inc., and since that court found for the Seas Shipping Company, Inc. on the merits, plaintiff is estopped from proceeding against the principal of the Seas Shipping Company, Inc. I do not think this is a good defense

---

[4] "Carbon Copy from
Robin Line        December 23rd, 1941
Seas Shipping Co., Inc.

W. J. Byrnes & Co. of New York, Inc.
25 Broadway,
New York, New York

Attention of Mr. W. J. Byrnes
              Re: SS Tropic Star

Gentlemen:
    "Please be referred to our telephone conversation of this forenoon.
    "We have been instructed by the Maritime Commission to cancel the booking of 1000 tons of copra that was made per above conversation from Beira to New

York, and would thank you to advise your principal accordingly.
    "Regretting the necessity for this action, we remain
                    Very truly yours,
                        Robin Line
                        F. R. Smith
FRS/DK      Inward Freight Manager
"cc Mr. A. E. King, Asst. Director
Emergency Shipping
Maritime Commission, Washington, D. C.
Mr. H. J. Tieg
Norwegian Shipping and Trade Commission, New York City
Mitchell, Cotts & Co., Ltd., London
Mitchell, Cotts & Co., Ltd., Durban."

to the case at bar. The rules or standards for the application of the doctrine of estoppel by res adjudicata as set forth in Russell v. Place, 94 U.S. 606, at page 608, 24 L.Ed. 214, are

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,—the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudication actually made, when the record leaves the matter in doubt, such evidence is admissible." See Soderberg v. Armstrong, C.C., 116 F. 709; Kelliher v. Stone & Webster, 5 Cir., 75 F. 2d 331, 332.

The affirmance without opinion by both the Appellate Division and the Court of Appeals is not an adoption of the reasoning of the trial court or its legal conclusions, but merely an approval of the result, and hence not binding under the doctrine of stare decisis on the legal conclusions stated in the trial court's opinion. Rogers v. Decker, 131 N.Y. 490, 493, 30 N.E. 571; Matter of Clark, 275 N.Y. 1, 4, 9 N.E.2d 753; People ex rel. Palmer v. Travis, 223 N.Y. 150, 156, 119 N.E. 437; Scott & Co. v. Scott, 186 App.Div. 518, 526, 174 N.Y.S. 583; Matter of Brush, 154 Misc. 480, 483, 277 N.Y.S. 559; Matter of Hilliard, 164 Misc. 677, 688, 299 N.Y.S. 788, affirmed 254 App.Div. 879, 5 N.Y.S.2d 92, re-argument denied 255 App.Div. 781, 7 N.Y.S.2d 111.

The trial court's conclusions are not the law of the case at bar nor a judicial determination which must necessarily be followed; therefore, since there has been no final adjudication of the points now raised, there is no estoppel by judgment in favor of the present defendant.

The next question is whether the evidence in the case at bar sustains the defense of frustration and excuses the non-performance of the contract of carriage.

"The doctrine of Commercial frustration is predicated upon the premise of giving relief in a situation where the parties could not provide themselves by the terms of the contract against the happening of subsequent events, but it does not apply where the intervening event was reasonably forseeable and could and should have been controlled by provisions of such contract." 157 A.L.R. 1446; see 158 A.L. R. 1446; 156 A.L.R. 1446; 155 A.L.R. 1447; 154 A.L.R. 1445; Williston On Contracts Revised Ed. Vol. 6, Sec. 1959, p. 5496; also Sec. 1939; State Mutual Life Assur. Co. v. Gruber, 269 App.Div. 170, 54 N.Y.S.2d 729; 119 Fifth Avenue v. Taivo Trading Co., 190 Misc. 123, 124, 73 N.Y.S. 2d 774; Berline v. Waldschmidt, 159 Kan. 585, 156 P.2d 865.

To establish the defense of frustration it must appear that the one asserting it had not been instrumental in bringing about the intervening event either by positive action or acquiescence, and the act of government which is alleged to have frustrated the performance of the contract must be one in its sovereign capacity, a vis major or in the nature of a vis major. Williston on Contracts Revised Ed. Vol. 6, Section 1959, p. 5496; Graves v. Miami Steamship Co., 29 Misc. 645, 648, 61 N.Y.S. 115; London & Lancashire Indemnity Co. v. Board of Com'rs, 107 Ohio St. 51, 140 N.E. 672.

Where one voluntarily by contract places ships under government order, the doctrine of frustration does not apply. Graves v. Miami Steamship Co., supra. This defendant prior to entering into the contract with plaintiff entered into a contract with the United States Government under the conditions of the Ship Warrants Act. It knew or should have known

that its future contracts for carriage were subject to the conditions and potential limitations of the Ship Warrants Act. The plaintiff recognized its contractual obligation to the Maritime Commission for it appears that a copy of plaintiff's contract with defendant was forwarded to the Commission. Under such circumstances the defendant cannot claim that the orders of the Maritime Commission were not foreseeable. That defendant did not expect the outbreak of war nor anticipate that the Maritime Commission would exercise the rights granted under the Ship Warrants Act does not alter the situation for it could have provided for such contingencies in its contract with plaintiff. State Mut. Life Assur. Co. v. Gruber, supra, 269 App.Div. at page 172, 54 N.Y.S.2d 729. It further appears that the act of the Maritime Commission in requesting the cancellation of the booking of plaintiff's copra was not an exercise of vis major, but merely the exercise of a contractual right granted to it by the defendant. Baker Castor Oil Co. v. Insurance Company of North America, 2 Cir., 157 F.2d 3.

The defense of frustration is not sustained and the defendant is liable for its breach of contract of carriage.

■ In its complaint the plaintiff alleges that by reason of the defendant's breach, the "plaintiff was deprived of the whole of said market value [of the copra] and lost the whole difference between said market price and cost". Defendant urges that plaintiff never owned the cargo but merely intended to resell it, and therefore plaintiff in fact is merely suing to recover prospective profits it would have made on its potential contract of resale. However, it was stipulated upon trial that "under the contract between the plaintiff and the Manica Trading Company, Limited, of Beira, acting for Companhia do Boror of Macuse, title to the copra was to pass to plaintiff upon payment under the letter of credit upon delivery of bill of lading. The goods not having been loaded and no bill of lading having been issued, no payment was made and title to the copra never was acquired by the plaintiff. Plaintiff did not pay any part of the agreed purchase price of the copra".

It is therefore evident that the only so-called profit plaintiff is suing for is that which is inherent in the market price, and not a profit resulting from a specific subcontract that plaintiff may have had with a third party. The former is clearly distinguishable from the latter and recoverable. Sedgwick on Damages, 9th Ed., Section 198, 843a. The ordinary measure of damages for the failure to transport is "the difference between the value of the goods at place of shipment and the place of delivery where they should have arrived * * * deducting the freight or price of carriage". Sedgwick on Damages, 9th Ed. Vol. 3, Section 842.

■ Where there is a firm contract for purchase at the place of loading and the evidence shows that the commodity to be shipped is ready for shipment at such point, the fact that the contract of carriage is made in advance of purchase does not destroy plaintiff's right to recover the customary measure of damages. Polar Steamship Corp. v. Inland Overseas S. Corp., 4 Cir., 136 F.2d 845, 843, certiorari denied 320 U.S. 774, 64 S.Ct. 83, 88 L.Ed. 464.

It was stipulated that the plaintiff had the copra at Beira at the time of the cancellation, ready to load on board and that despite plaintiff's diligent efforts subsequent to cancellation no other vessel could be obtained to transport it to New York. Therefore, plaintiff is entitled to recover the measure of damages stated above.

■ Defendant cancelled on December 22, 1941 and the time for the arrival of the copra in New York is to be measured from that date. The stipulated length of voyage of a vessel of the type of the Tropic Star from Beira to New York was about eight weeks. Therefore, the copra under normal conditions would have arrived in New York about the middle of February, 1942. The market price of copra in New York at this time was stipulated to be approximately $153.50 a ton, and on this basis plaintiff's damage is computed as follows:

Market price in New York, 1,000 tons at $153.50 .............. $153,500

Contract price at $64 a ton ................. $64,000

Freight at $22 a ton.... 22,000

Insurance at $3.31 a ton 3,310    89,310

Plaintiff's damage ........ $ 64,190

Plaintiff may have decree for $64,190 with interest from February 15, 1942. Plaintiff to promptly submit proposed findings of fact and conclusions of law on five days notice.

David Marcus, of Los Angeles, Cal., for plaintiff.

Lawler, Felix & Hall, of Los Angeles, Cal., for defendants.